Kelly Darlene STINSON

v.

Warren Kent STINSON.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Sept. 20, 2004 Session.

Oct. 25, 2004.

Permission to Appeal Denied by
Supreme Court March 21, 2005.

Douglas R. Beier, Morristown, Tennessee, for the Appellant, Warren Kent Stinson.

Edward R. Sempkowski, Morristown, Tennessee, for the Appellee, Kelly Darlene Stinson.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

In this divorce case Husband contends that the trial court erred in awarding Wife spousal support in the amount of $8,500.00 per month for a period of 15 years, in its division of marital assets consisting of dental equipment and contributions to a retirement plan, in assessing the value of certain personal property distributed between the parties, and in awarding attorney's fees to Wife. We affirm as modified the trial court's award of spousal support and assessment of the value of the parties' marital property. We otherwise affirm the judgment of the trial court as rendered and remand.

Appellant Husband, Warren Kent Stinson, and Appellee Wife, Kelly Darlene Stinson, were married in August of 1988. Following the marriage, Husband worked as a dentist and maintained a successful practice. Wife worked as a nurse until the birth of the parties' second child in 1994. After the birth of the second child, Wife worked on a part-time basis. The parties began experiencing marital problems in the early to mid–1990's. After Wife filed for divorce in 1999, the parties reconciled but separated in October of 2000. Subsequently, the parties reached an agreement concerning their children and in May of 2003, the trial court approved parenting plans submitted with respect to the parties' two minor children pursuant to which it was agreed that Wife would have primary residential care of Joel, who was nine years of age at the time of trial, and Husband would have primary residential care of Ethan, who was twelve years of age at the time of trial. During the trial of this case, which commenced on May 5, 2003 and ended on May 14, 2003, the court heard extensive testimony regarding the grounds for divorce, which included adultery, mental abuse, physical abuse, and excessive use of alcohol and drugs. At the time of the trial, Husband was living with his girlfriend, who also served as his dental assistant. On July 10, 2003, the trial court entered its judgment granting Wife an absolute divorce on grounds of adultery, awarding her spousal support in the amount of $8,500.00 per month for fifteen years, and partial reimbursement of attorney's fees incurred by her in prosecution of the divorce. The trial court also assessed the value of items of property belonging to the parties, designated such property as either "marital" or "separate", and distributed it accordingly. Husband appealed the trial court's decision.

Husband presents the following four issues for our review:

1) Did the trial court err in awarding Wife spousal support in the amount of $8,500.00 per month for fifteen years?

2) Did the trial court err in its division of the parties' assets with regard to dental equipment and $73,955.00 representing contributions to Husband's retirement plan?

3) Did the trial court err in assessing the value of marital furniture/furnishings and a 1994 Sea Ray boat?

4) Did the trial court err in awarding Wife partial reimbursement of her attorney's fees?

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996) and T.R.A.P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). "On an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn.Ct.App. 1990), citing *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct.App.1974).

The first issue raised by Husband is whether the trial court erred in awarding Wife spousal support in the amount of $8,500.00 per month for fifteen years. In addressing this issue, we are cognizant that a trial court has wide discretion with respect to alimony and we are

generally disinclined to alter a trial court's decision in that regard. *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn.2002).

█ In reaching a conclusion as to the nature, amount and length of term of spousal support a party should receive, a trial court is required to consider all relevant factors set forth at Tenn.Code Ann. § 36–5–101(d)(1) which are, in this case, as follows:

> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
>
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (iii) The duration of the marriage;
>
> (iv) The age and mental condition of each party;
>
> (v) The physical condition of each party; including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (vii) The separate assets of each party, both real and personal, tangible and intangible;
>
> (viii) The provisions made with regard to the marital property as defined in § 36–4–121;
>
> (ix) The standard of living of the parties established during the marriage;
>
> (x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
>
> (xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
>
> (xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

While a trial court should consider each of the above factors relevant under the circumstances, the two most important factors to be considered in awarding spousal support are need of the disadvantaged spouse and the obligor spouse's ability to pay. *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001).

In its memorandum opinion, the trial court cites both the above statute and relevant case law it considered in reaching its determination regarding support due to Wife and its final judgment states, *inter alia,* as follows:

> In the case at bar, the evidence supports a finding that for 2002, Defendant/Husband enjoyed an adjusted gross income of approximately $400,000. Working part-time as a Registered Nurse, Plaintiff/Wife in 2002 enjoyed a gross annual income of approximately $30,000. The parties' income and assets will not be sufficient for them to achieve the same standard of living after the divorce that they enjoyed during the marriage. Plaintiff/Wife, as a disadvantaged spouse, does not need further education or training. The evidence supports a finding that for her, economic rehabilitation is not feasible and therefore, long term support is necessary. Her need to work part time so as to provide necessary and appropriate par-

enting care for the minor child residing with her is another significant consideration. All relevant factors, including those elucidated in T.C.A. 36–5–101(d)(1) have been considered to determine the nature and extent of spousal support. With the primary factors of the need of the disadvantaged spouse and the obligor spouse's ability to pay having been considered, the circumstances of the instant action warrant long term spousal support. As such, this Court orders that Defendant/Husband pay to Plaintiff/Wife the amount of $8,500.00 per month as spousal support for a period of fifteen (15) years.

In its memorandum opinion and final judgment, the trial court offered a detailed statement of the grounds for its decision as to the award of spousal support. Our review of the record confirms that the trial court considered all of those factors it was obligated to consider in reaching that decision. However, we respectfully disagree that the evidence presented in this case supports the amount of support awarded Wife in this case.

The trial court's order and memorandum opinion indicate that the primary factors underlying the court's decision as to the support award were the inadequacy of Wife's current part time employment income of $30,000.00 and her inability to work full time because of the responsibility she has "to provide necessary and appropriate parenting care for the minor child residing with her." [1] At the time of trial, the minor child residing with Wife was nine years of age. We do not disagree that, at the present time and for some period of time in the future, the care and attention Joel will require from his mother could prevent her from engaging in full time employment. However, as Joel grows older and increasingly more independent, the amount of care and attention he will require of his mother will inevitably diminish and she will have proportionately more time to work and, thereby, increase her income. We further observe that, although the trial court decrees that the support award shall continue for fifteen years, in 2012, which is only eight years away, Joel will have reached the age of majority.

The record shows that Wife has a bachelor of science degree in nursing and is a registered nurse with fifteen years of experience in the area of her specialty which is labor and delivery. As the trial court noted, Wife is not in need of further education or training. In her brief, Wife states that "[s]he's a good delivery nurse." We find nothing in the evidence before us to show that Wife could not obtain full time employment in her profession should she choose to do so.

Recognizing that need is one of the two most important factors in awarding spousal support, we conclude that the trial court's award of spousal support in the amount of $8,500.00 per month for fifteen years is excessive and unwarranted. Wife's affidavit, filed on March 31, 2004, states that her monthly expenses total $3,457.86. Of this amount, $500.00, or approximately fourteen percent, is unsubstantiated and designated "miscellaneous." Wife's speculation at trial that her expenses "might even double" if she buys a house is also not clearly substantiated— "Well, the water bill would go up. The insurance would go up substantially. The rent. . . ." Taking into consideration the amount of Wife's stated expenses and her

---

**1.** We are compelled to observe that Husband is apparently able to work on a full time basis even though, as noted, he has primary residential care of the parties' other minor child, Ethan.

prospects for full time employment when her son grows older, we find that modification of the trial court's support award is appropriate. Accordingly, we modify the support awarded Wife such that she shall be granted support for a period of ten years from the date of divorce. Such support shall be paid by Husband in the amount of $7,500.00 per month for the first five years of that period of time and in the amount of $6,500.00 per month thereafter and shall terminate prior to expiration of the ten year period in the event of Wife's death or re-marriage. Even as decreased, this award of support will exceed Wife's stated expenses by at least $3,000.00 per month and will be reasonably sufficient to meet her needs.

The second issue we address is whether the trial court erred in its division of marital assets with respect to $73,955.00 representing contributions to Husband's retirement plan and dental equipment.

■ Tenn.Code Ann. § 36–4–121(c) provides that the court shall consider the following factors in making an equitable distribution of marital property:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective.

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

A trial court is allowed wide latitude in determining an equitable division of marital property and we will defer to the trial court's determination unless it is inconsistent with the factors set forth above or there is a preponderance of evidence to the contrary. *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn.Ct.App.1991).

■ The division of the marital estate begins with the classification of the parties' property as either "marital" or "separate." *McClellan v. McClellan*, 873 S.W.2d 350, 351 (1993). Tenn.Code Ann. § 36–4–121 sets forth the definition of marital property. "Generally speaking property that is acquired during a marriage by either or both spouses and still owned by either or both spouses when the divorce is granted is classified as marital property and is thus subject to equitable division." *Humphries v. Humphries*, 2001 WL 825986 (Tenn.Ct. App.2001) at *3.

■ We first address Husband's argument that the trial court should not have awarded Wife an interest in $73,955.00

consisting of contributions made to his retirement plan. This plan is held at Home Federal Bank which holds title over the plan assets as trustee. The plan is administered by Husband's father, Dr. Robert Stinson. At the time of trial, Husband's retirement plan was valued at $512,779.00.

The trial court decreed that the total value of real and personal marital property in the amount of $1,142,706.00 be equally divided between the parties with each receiving assets valued at $571,353.00. With respect to the $512,779.00 value assigned to Husband's retirement plan, Wife received $460,694.00 and Husband received $52,085.00.

Husband asserts that the total value of the retirement plan is attributable in part to $73,955.00 in contributions made to the plan after Wife filed her complaint for divorce on March 11, 1999. Husband acknowledges that the court must classify property as "marital" if it is acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing, citing *Jennette v. Jennette*, 1999 WL 732519 (Tenn.Ct.App.1999) at *1. While Husband admits that the $73,955.00 is marital property, he contends that under the circumstances of this case it is inequitable for Wife to be awarded an interest in same. As grounds for this argument, Husband asserts that during the time these contributions were being made he was making payments of $4,000.00 per month under a *pendente lite* order entered in the case and was making installment payments on her vehicle in the amount of $900.00 per month. Husband further asserts that Wife admitted at trial that she wasn't in the home during the time the $73,955.00 was contributed to the plan and that she had nothing to do with contributions made to the plan during the last four years.

Tenn.Code Ann. 36–4–121(c)(5) as set forth above provides that, in making an equitable division of marital property, the court may consider the contribution of each party to the acquisition or appreciation of the property, "including the contribution of a party to the marriage as homemaker, wage earner or parent." The record shows that Wife moved out of the marital residence on October 23, 2000, and, she did not reside in the home as a homemaker after that date, which preceded the final divorce hearing by approximately two years and seven months (not four years as indicated by Husband). Although the record does not show that Wife contributed to the retirement plan funds as a wage earner or, after October of 2000, as a homemaker, both prior to the time she moved out of the marital residence and, thereafter, for the entire period of time preceding the divorce, she continued to care for the parties' children and she was subsequently awarded primary responsibility for the care of Joel and responsibility for the care of Ethan on weekends. Under Tenn.Code Ann. § 36–4–121, a party's contribution to the marriage as parent is appropriately considered in making an equitable division of marital property.

In addition to our findings as to Wife's contributions to the retirement plan funds awarded to her, our review of the record with respect to the specific assets and liabilities of this marriage shows that the evidence does not preponderate against the trial court's determination in regard to the apportionment of the subject retirement funds.

Husband also contends that the trial court erroneously classified dental equipment valued at $27,950.00 which was given to him and his brother by their father as marital property. Husband

states that this equipment is "clearly separate, non-marital property."

 Assets determined to be the separate property of either spouse are not to be divided between the parties but are, instead, to be assigned to the party to whom the property is separate in nature. *Brock v. Brock,* 941 S.W.2d 896, 900 (Tenn. Ct.App.1996). Tenn.Code Ann. § 36–4–121(b)(2) provides that "separate property" includes "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent."

The dental equipment in question was apparently included in the transfer by Husband's father, Dr. Robert Stinson, of his dental practice to Husband and Husband's brother in 1996 and, thus, it is not disputed that this equipment was acquired during the marriage. Although Dr. Robert Stinson denies that he was paid any money by Husband when he transferred the equipment to him and his brother, his testimony under cross-examination appears to be evasive and self-contradictory and indicates that he submitted statements to the Internal Revenue Service which show that he did receive money for the transfer:

Q ... In 1996, I believe it was, you sold the professional corporation, the Robert Stinson, DDS PC to your sons Warren and Eugene, did you not?

A I believe that's what the records show.

Q And how much did you sell it for?

A I didn't get no money for it. I think the records show I sold it for a total of— to each of them for sixty-two thousand, five hundred dollars each.

Q Okay. Each of your boys, Warren and Eugene Woody, paid you sixty-two thousand five hundred dollars each?

A No. That's what the records show. I don't think they paid me nothing.

Q They didn't pay you anything?

A I don't think they paid me nothing.

Q Okay. But when you're talking about records, you're talking about income tax records?

A Yeah.

Q That you claimed on your income tax records that ...

A Paid tax on it, yeah.

Q You paid tax on it?

A Yeah.

Q And that actually wasn't true, was it?

A To my knowledge, I think it was true.

Q Well, you just told us that they didn't pay you—no money changed hands?

A I don't remember getting any money.

Q Okay. But you reported it on your income tax as a sale to the IRS?

A Yeah. I paid taxes on it. They got the money on it.

The testimony of Husband's father is, at best, equivocal. Either Dr. Robert Stinson's statement that he did not receive money for the equipment from Husband is untrue or his statement to the Internal Revenue Service that he did receive money is untrue. Accordingly, Dr. Robert Stinson has compromised his credibility as a witness. The evidence does not preponderate against the trial court's designation of the dental equipment as marital property.

The third issue we address is whether the trial court erred in its valuation of a 1994 Sea Ray boat and marital furniture/furnishings.

In its division of the parties' marital property, the trial court awarded Husband a one-half interest in a 1994 Sea Ray boat, the other half interest in that asset being

owned by Dr. Robert Stinson. Husband's interest in this boat was assessed at $12,000.00 by the trial court. Husband argues that the trial court erred in its valuation of the boat. He maintains that the only credible evidence presented regarding the boat's value was that of an appraiser who stated that the full value of the boat was only $7,000.00 and, therefore, the actual value of his one-half interest is only $3,500.00. Husband asserts that the only contrary proof as to the boat's value was the testimony of Wife that the boat has a value of only $10,000.00. Husband contends that Wife is not an owner of the boat and offered no other proof as to the boat's value.

It is well settled under the law in this state that an owner of property is competent to testify as to the value of such property. *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 234 (Tenn.Ct. App.1976). The evidence does not preponderate against the trial court's finding that the boat was marital property. It follows that Wife was an owner of this asset and, as such, was competent to testify as to its value. Given this testimony of Wife, we do not agree with Husband's argument that the evidence preponderates in favor of the $7,000.00 valuation he urges. At the same time, we do not agree that the evidence supports the value of $24,000.00 placed upon this asset by the trial court. In her brief, Wife directs us to nothing in the record which would support a valuation of $24,000.00 and concedes that she testified that the boat's value is $10,000.00. Accordingly, we are compelled to reduce the value assigned to Husband's one-half interest in the boat from $12,000.00 to $5,000.00.

Husband also contends that the trial court erred in valuing the marital furniture/furnishings awarded to Husband at $46,448.00. Husband asserts that Wife admitted at trial that she used new values in her valuation of the marital furniture, referencing the following testimony:

Q Now, this is an exhibit that you attached to the interrogatory answers listing your personal property, exhibit # 53, do you recognize this?

A Yes.

Q And is that your writing on there?

A No.

Q Who wrote that one there?

A I believe the man at Braden's.

Q Okay. And it says new furniture price, thirty-two, nineteen, and that's a corner cabinet, isn't it?

A Yes.

Q That's one of the corner cabinets you've listed on exhibit # 2, isn't it?

A Yes.

Q And you used that figure that he gave you, that thirty-two nineteen, didn't you?

· · ·

A Well, thirty-two hundred.

While this testimony does appear to show that Wife assigned a value to one piece of furniture based upon its value as new, its does not indicate that any of the other marital furniture/furnishings were assigned erroneous values and Husband does not reference evidence which preponderates against the trial court's assessment of the value of the remaining marital furniture/furnishings. Based upon the referenced testimony of Wife we find it appropriate to reduce the value assigned to the marital furniture/furnishings which were awarded to Husband. We assess the value of the cabinet which was the subject of Wife's testimony to be $1,000.00–approximately thirty per cent of $3,219.00, the apparent new value of this asset. Accordingly, the total value assigned to the marital furniture/furnishings which were

awarded to Husband is reduced from $46,448.00 to $44,229.00.

Our reduction of the values assigned to the 1994 Sea Ray boat and the noted item of furniture awarded to Husband results in an overall reduction of the total value of the marital assets in this case from $1,142,706.00 to $1,133,487.00. In keeping with the trial court's equal division of the marital property, each party should receive $566,743.50 of this amount. Accordingly, we remand to the trial court for an increase in distribution to Husband and a decrease in distribution to Wife to compensate for the indicated reductions in the value of assets awarded to Husband.

The final issue we address is whether the trial court erred in ordering Husband to pay Wife $20,000.00 as partial reimbursement of her attorney's fees.

A trial court is permitted to allow awards to defray the legal expense of a divorce proceeding in its discretion and this Court is not inclined to second guess the trial court unless the evidence preponderates against the trial court's decision. *Batson v. Batson,* 769 S.W.2d 849, 862 (Tenn.Ct.App.1988). Upon our review of the record in the instant matter we are compelled to conclude that the evidence in this case does not preponderate against the trial court's award of attorney's fees to Wife.

For the foregoing reasons, the judgment of the trial court is affirmed as modified and the case is remanded for further action consistent with this opinion. Costs of appeal are adjudged equally against Warren Kent Stinson and Kelly Darlene Stinson and their sureties.