IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 30, 2005

## WILL HENDERSON AND EXPRESS REFUNDS, INC., d/b/a HENDERSON TAX SERVICE v. CLEAR CHANNEL BROADCASTING, INC., JANICE FULLILOVE, AND BRUCE DEMPS

An Appeal from the Circuit Court for Shelby County
CT-004117-02     Donna M. Fields, Circuit Judge

No. W2004-02903-COA-R3-CV - Filed September 21, 2005

This is a defamation case. After listening to a local talk radio show, the plaintiffs filed a lawsuit against the defendants, asserting that the defendants had broadcast defamatory material on the radio show concerning the plaintiffs' business practices. There was no recording of the talk radio show. In a bench trial, many witnesses testified about statements made on the show. After the trial, the trial court found that there were so many different versions, there was no way to determine what was actually said on the radio program. The trial court concluded that, assuming unflattering statements were made, they did not damage the plaintiffs' reputations. The trial court also concluded that, even if the statements made were defamatory, the plaintiffs did not prove any injury. The plaintiffs appeal. We affirm, finding that the evidence does not preponderate against the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J.,W.S., and ALAN E. HIGHERS, J., joined.

Stephen R. Leffler, for the appellants Will Henderson and Express Refunds, Inc., d/b/a Henderson Tax Service.

Louis P. Britt and Keith R. Thomas, for the appellees Clear Channel Broadcasting, Inc., Janice Fullilove, and Bruce Demps.

**OPINION**

This case arose on a Sick and Tired Tuesday. WDIA Radio Station in Memphis, Tennessee has a talk radio program, hosted by Janis Fullilove on weeknights from 9:00 p.m. to 11:00 p.m. Fullilove hosted a free-wheeling talk show entitled "Janis Fullilove Unleashed," with a different theme each night. Tuesdays were designated "Sick and Tired Tuesdays" in which listeners would call

in to discuss something they were sick and tired of. WDIA radio station did not record Fullilove's show.

On February 12, 2002, frequent listener Norman Redwing ("Redwing") called into the "Sick and Tired Tuesday" show and told Fullilove on the air that he was sick and tired of a woman harassing his niece, Shaunte Winfrey ("Winfrey"). Redwing told Fullilove that this woman had been having an affair with Winfrey's husband, and had harassed Winfrey, stolen her mail, and faxed messages to her employer. It is unclear whether Redwing identified the woman as Cheryl Henderson ("Ms. Henderson"). At any rate, after hearing Redwing's call to the show, Ms. Henderson called Fullilove's show as well. The producer of the radio show screens callers and sends the host a message during the show identifying callers who are on hold. Fullilove was sent a message that the woman about whom Redwing had complained was on hold. Fullilove took Ms. Henderson's call on the air and apparently put her on a conference call with Redwing, in which Ms. Henderson identified herself by name and addressed Redwing's accusations. While Ms. Henderson was on the air, Fullilove was sent another message indicating that Redwing's niece, Winfrey, whose husband was purportedly involved with Ms. Henderson, had called in and was on hold. Fullilove then apparently put both Winfrey and Ms. Henderson on a conference call on the air, and a colorful exchange between the two women ensued.

Other listeners subsequently called the show to comment on Ms. Henderson's morals or lack thereof, and at least one caller claimed to know Ms. Henderson and accused her of having a propensity to engage in affairs with married men. During the course of the many accusations and cross-accusations, Ms. Henderson was identified as being employed by Plaintiff/Appellant Henderson Tax Service,[1] and was accused of misusing information from Henderson Tax Service for her own purposes, in order to gain information about Winfrey, and a comment was made to the effect of "you never know what they do with your information." Ms. Henderson's father and the owner of Henderson Tax Service, Plaintiff/Appellant Will Henderson ("Mr. Henderson") heard part of Fullilove's show and the accusations against his daughter; however, there is no indication that he was identified by name on air on the show.

After this edition of the Sick and Tired Tuesday show finally ended, the controversy continued in the form of a defamation lawsuit. On July 23, 2002, Mr. Henderson and Henderson Tax Service filed a complaint against Clear Channel Broadcasting, Inc., which owns and operates the WDIA radio station, Clear Channel's senior vice president Bruce Demps, Fullilove, and Redwing.[2] In the lawsuit, the plaintiffs alleged that the statements made on the Janis Fullilove Unleashed show on February 12, 2002, defamed Mr. Henderson and Henderson Tax Service.

---

[1] Plaintiff/Appellant Express Refunds, Inc., which does business as Henderson Tax Service, is a tax preparation and bookkeeping service.

[2] Prior to trial, the plaintiffs announced a voluntary dismissal of the claim against Norman Redwing.

In response, on September 5, 2002, Clear Channel, Demps, and Fullilove (collectively "Clear Channel") filed an answer and counter-claim ("Counter-claim"). In the answer, Clear Channel admitted that Redwing called the radio station on February 12, 2002 but denied that Clear Channel participated in defaming Mr. Henderson or Henderson Tax Service. Clear Channel asserted, *inter alia*, that Mr. Henderson's claims were barred by the statute of limitations, that the alleged defamatory statements were true or substantially true, and that Mr. Henderson and Henderson Tax Service suffered no injury from the statements.

In its Counter-claim, Clear Channel asserted that Mr. Henderson, on behalf of Henderson Tax Service, contracted to purchase promotional services from Clear Channel in November 2001 to run for six weeks during the 2002 tax season. The total value of the promotional services was $11,017.00. Clear Channel alleged that it provided the services to Mr. Henderson pursuant to their agreement but that Mr. Henderson refused to pay. Accordingly, Clear Channel claimed that Henderson was liable to Clear Channel for breach of contract in the amount of $11,017.00.

On April 21, 2003, Clear Channel filed a motion for partial summary judgment on its counter-claim against Mr. Henderson for breach of contract. By order dated January 9, 2004, the trial court granted summary judgment in favor of Clear Channel against Mr. Henderson on the counter-claim for breach of contract. A judgment was entered against Mr. Henderson in the amount of $11,017.00. A bench trial was then held on Mr. Henderson's claims of defamation.

It was undisputed that there was no recording of the Janis Fullilove Unleashed show on the evening in question. Consequently, during the two-day bench trial held on June 21 and 22, 2004, the trial court heard testimony from numerous witnesses, each with a different recollection of the comments made during the course of the show. With respect to Mr. Henderson and Henderson Tax Service, Fullilove, Winfrey, and Fred Moore, the operator of the control board during the first hour of the show, all testified that Fullilove never made any derogatory statements about Mr. Henderson or Henderson Tax Service. According to Winfrey, Fullilove asked Ms. Henderson if she was the woman on Henderson Tax Service's billboard, but that was the only mention, by Fullilove, of Henderson Tax Service. Trineice Patrick, a producer at WDIA, testified that she did not hear Fullilove make any derogatory comments about Mr. Henderson or Henderson Tax Service.

Theodore Dorsey, a long-time client and friend of Mr. Henderson, testified that Fullilove stated on the show that this type of business should be closed down, in reference to Henderson Tax Service. Emma Denton, another client and friend of Mr. Henderson, testified that she heard Fullilove make a comment to the effect of "you never know what they will do with information" from clients. Mr. Henderson testified that he remembered Fullilove making such a statement as well.

On July 13, 2004, the trial court issued its ruling. The trial court observed that there were so many different versions of what transpired during Fullilove's talk show that it was difficult to determine what was said. Even so, the court found the alleged defamatory statements did not constitute a serious threat to the reputation of either Mr. Henderson or Henderson Tax Service. The alleged derogatory statements were made about Ms. Henderson, the court ruled, and not about

Henderson Tax Service or Mr. Henderson. Moreover, the trial court found that, even if the statements made on the radio were defamatory as to Mr. Henderson or Henderson Tax Service, Mr. Henderson had failed to prove that the alleged defamation had caused any injury to him or to his business. The trial judge noted that Mr. Henderson had asserted that he had suffered personal humiliation and mental anguish because of the radio show, but she observed that such a reaction would be normal in a father who just heard on a public radio broadcast that his daughter was having an affair with a married man, and that Mr. Henderson offered no proof as to the exact cause of his emotional distress. The trial court also found that the evidence did not show clearly that Henderson Tax Service had suffered any injury as a result of the broadcast. The plaintiffs presented conflicting testimony as to how many clients Henderson Tax Service had lost or gained during the period following the broadcast, and they presented no testimony from any client stating that he or she had left Henderson Tax Service because of what was broadcast on the radio. In light of this evidence, the trial court concluded that there was no defamation of the plaintiffs and no injury to the plaintiffs and dismissed the claim with prejudice.

On August 4, 2004, the plaintiffs moved for a new trial, arguing that the court's ruling was not in accordance with the evidence presented at trial. This was denied on October 19, 2004. On November 16, 2004, the plaintiffs filed a notice of appeal.

On appeal, the plaintiffs argue that the trial court erred in finding that there was no defamation, noting that accusations of identity theft in the current social climate are especially damaging because of the pervasiveness of the crime. In addition, the plaintiffs contend that the timing of the broadcast, in February, made the derogatory statements particularly damaging because that is the time that many people begin tax preparations.

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. ***Campbell***, 919 S.W.2d at 35.

To the extent that the trial court's conclusion hinged on determinations of the witnesses' credibility, we defer to these determinations. "When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, as the trier of fact, has the opportunity to observe the witnesses in their manner and demeanor while testifying and is in a far better position than this Court to decide those issues. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." ***Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.***, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002) (quoting ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995)).

In order to establish a prima facie case of defamation, the plaintiff must prove that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain

the truth of the statement." ***Sullivan v. Baptist Mem'l Hosp.***, 995 S.W.2d 569, 571 (Tenn. 1999). To recover damages, the plaintiff must show that the statement resulted in injury to the plaintiff's reputation or standing in the community. ***Quality Auto Parts Co. v. Bluff City Buick Co.***, 876 S.W.2d 818, 820 (Tenn. 1994). The plaintiff must prove actual injury from the alleged defamation. ***Davis v. The Tennessean***, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). The statement must be more than simply annoying, offensive or embarrassing; it must constitute a "serious threat to the plaintiff's reputation" and hold the plaintiff up to "public hatred, contempt or ridicule." ***Stones River Motors, Inc. V. Mid-South Pub'g Co.***, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

In this case, there was evidence that Ms. Henderson was identified as an employee of Henderson Tax Service, evidence that an anonymous caller[3] accused Ms. Henderson of misusing Winfrey's tax information, and evidence that talk show host Fullilove remarked that "you never know what they do with your information" and that "this type of business" should be shut down. All of this evidence, however, was disputed. The trial court found that there was no defamation of Mr. Henderson or Henderson Tax Service, implicitly finding that the testimony on these statements was not credible. We accord great weight to the trial court's determinations of credibility, and see no reason to disturb it on appeal. ***See Stinson v. Stinson***, 161 S.W.3d 438, 440 (Tenn. Ct. App. 2004). The trial court found that the plaintiffs had not proven that the alleged statements constituted a serious threat to the reputations of either Henderson Tax Service or Mr. Henderson, and that no injury to the business was proven. From our review of the record, the evidence does not preponderate against this finding. Under all of these circumstances, we find no error in the trial court's dismissal of the plaintiffs' claims.

The decision of the trial court is affirmed. Costs of this appeal are taxed to the appellants, Will Henderson and Express Refunds, Inc. (d/b/a Henderson Tax Service), or their surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[3]The extent to which the plaintiffs seek to hold the defendants legally responsible for the comments of an anonymous caller is unclear. The issue was not addressed by the trial court, and our holding on appeal makes it unnecessary for this Court to address it.