IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 28, 2011 Session

## ROBERT LEE MELVIN v. WENDY ANN MELVIN

**Direct Appeal from the Chancery Court for Wilson County**
**No. 07456      Charles K. Smith, Chancellor**

**No. M2010-01418-COA-R3-CV - Filed July 26, 2011**

Plaintiff Husband appeals the trial court's order awarding him no visitation with the parties' children, its classification and award of property to Mother, and the award of attorney's fees to mother. We reverse in part, affirm in part, and remand to the trial court to set visitation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part, Affirmed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Robert Lee Melvin.

Shawn Joseph McBrien, Lebanon, Tennessee, for the appellee, Wendy Ann Melvin.

### OPINION

This divorce action includes a highly contentious child custody/visitation dispute. Plaintiff/Appellant Robert Lee Melvin (Mr. Melvin) and Defendant/Appellee Wendy Ann Melvin (Ms. Melvin) were married in August 1995. Two children were born of the marriage, and Ms. Melvin had a daughter who was eight years of age when the parties married. In the summer of 2005, Ms. Melvin accepted a job on a farm in Giles County and she and the children moved out of the family home in Wilson County to reside on the farm. According to Mr. Melvin, the situation was not intended to be permanent. In October 2005, Ms. Melvin's eldest daughter was killed in an automobile accident. Thereafter, the parties' marriage apparently became increasingly strained.

Ms. Melvin filed a petition for divorce in the Chancery Court for Giles County in August 2007. In October 2007, Mr. Melvin filed a complaint for divorce in the Chancery

Court for Wilson County, and in November 2007, the Giles County court dismissed Ms. Melvin's complaint for lack of venue. In his complaint, Mr. Melvin asserted irreconcilable differences, adultery, inappropriate marital conduct, abandonment, "and any other applicable grounds" as grounds entitling him to an absolute divorce. He prayed for custody of the parties' minor children, child support, and a division of the parties' property. In his complaint, Mr. Melvin asserted that Ms. Melvin had moved to Giles County to assist a friend, and that Ms. Melvin was having an affair with the friend's husband, with whom she was living, when the complaint was filed. Ms. Melvin filed an answer and counter-complaint on July 9, 2009, denying Mr. Melvin's accusations and praying for an absolute divorce and custody of the parties' children. In the meantime, the parties disputed issues of child visitation and the matter was set to be tried in July 2009. After continuing the matter at the request of Mr. Melvin, and setting aside a July 2009 decree which followed a hearing from which Mr. Melvin departed without contemporaneous explanation or request, the trial court heard the matter in September 2009.

The trial court entered a final decree of divorce on June 22, 2010, awarding Ms. Melvin a divorce on the grounds of inappropriate marital conduct and dividing the parties' real and personal property. The court designated Ms. Melvin as primary residential parent, denied Mr. Melvin visitation rights, and ordered Mr. Melvin to have no contact with the parties' children. Mr. Melvin was ordered to pay child support in the amount of $441.00 per month. Mr. Melvin filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Melvin presents the following issues, as we slightly re-state them, for our review:

(1)    Whether the trial court erred by awarding custody of the parties' minor children to Ms. Melvin or, in the alternative, by failing to grant him visitation rights.

(2)    Whether the trial court erred in its valuation and division of the parties' real property.

(3)    Whether the trial court erred by awarding attorney's fees to Ms. Melvin.

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's

conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). We likewise review the trial court's application of law to the facts *de novo* without a presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

## *Discussion*

We turn first to whether the trial court erred in its award of custody of the parties' minor children to Ms. Melvin. Matters of child custody are within the broad discretion of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). When making a custody determination, the trial court must engage in an analysis of comparative fitness and determine the best interests of the children based on the factors provided at Tennessee Code Annotated § 36-1-106. Upon review of the record in this case, we cannot say the trial court abused its discretion by awarding custody of the parties' children to Ms. Melvin.

We turn next to whether the trial court erred by awarding no visitation to Mr. Melvin and by forbidding Mr. Melvin to have any contact with the children. Matters of visitation generally are within the broad discretion of the trial court. *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006). The Tennessee Code provides that a parent's residential time with a child shall be limited if the court determines that

> [a] parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:
>
> (1) A parent's neglect or substantial nonperformance of parenting responsibilities;
>
> (2) An emotional or physical impairment that interferes with the parent's performance of parenting responsibilities as defined in § 36-6-402;
>
> (3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;
>
> (4) The absence or substantial impairment of emotional ties between the parent and the child;
>
> (5) The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development;
>
> (6) A parent has withheld from the other parent access to the child for a protracted period without good cause;
>
> (7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or
>
> (8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

Tenn. Code Ann. § 36-6-406(d)(1)-(8) (2010). Additionally the code requires the trial court to "[m]inimize the child[ren's] exposure to harmful parental conflict." Tenn. Code Ann. § 36-6-404(a)(3)(2010).

In the absence of extreme circumstances, however, the public policy of this state, as expressed by Tennessee Code Annotated § 36-6-301 and reiterated by considerable case law, is that the non-custodial parent be awarded visitation reasonably sufficient to maintain the parent-child relationship. *E.g., Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1983); *In re Z.A.W.*, No. W2005-01956-COA-R3-JV, 2006 WL 1627180, at *4 (Tenn. Ct. App. June 12, 2006). Notwithstanding the discretion afforded the trial court in matters of child custody, the least restrictive visitation limits generally are favored in order to encourage the parent-child relationship. *E.g., Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *In re Z.A.W.*, 2006 WL 1627180, at *5. Additionally, the termination of all visitation has the practical effect of terminating the parent-child relationship, and accordingly must be supported by specific findings that visitation by the non-custodial parent will result in physical, emotional, or moral harm to the child. *Id.*

In this case, Mr. Melvin acknowledges making inappropriate disparaging comments about Ms. Melvin to the children. In its June 22, 2010, final judgment, the trial court found that Mr. Melvin "called [Ms. Melvin] ugly names, belittled her, and made inappropriate demands." The court also stated that it "believe[d] that [Mr. Melvin] has an attitude of superiority towards [Ms. Melvin] and all women in general." It found that the children had observed this behavior and that "the children appeared very cold toward their father and they had no problem telling their father they did not want to see him at all." The trial court stated that "the children expressed their feelings that at this time they do not feel safe and do not trust their father because of his behavior[.]" This behavior included Mr. Melvin's unilateral decision to secretly have the children tested at Sylvan Learning Centers and to have the parties' daughter DNA tested. The evidence does not preponderate against the trial court's findings, and in his brief, Mr. Melvin acknowledges that his behavior, including remarks made to and about Ms. Melvin, was less than exemplary. The record in this case does not support the complete denial of Mr. Melvin's rights to visit his children, however. There simply is no evidence that Mr. Melvin has inflicted harm on his children sufficiently severe to justify the practical severing of the parent-child relationship. Although we agree with the trial court that forcing the children to visit their father would not be in their best interest, the record does not support the denial of even supervised visitation should the children be willing. We accordingly reverse the trial court's order insofar as it denies Mr. Melvin any visitation rights, and remand on this issue. In so doing, we emphasize the prohibition against parental behavior that is disparaging of the other parent, and that visitation may be modified if necessary.

We next turn to whether the trial court erred in dividing the parties' property. Mr. Melvin asserts the trial court erred in classifying and dividing the land upon which the parties' placed their marital home. In his brief, Mr. Melvin asserts that he paid for approximately sixty percent of the land prior to the parties' marriage, and that the trial court erred by classifying the total appreciation of the land as marital property. He asserts that only 39.35 percent of the increase in value should be classified as marital property. Mr. Melvin asserts that the trial court erred by awarding Ms. Melvin one-half of the value of the post-marriage appreciation of the property, and that Ms. Melvin should be awarded 39.35 percent of the value that is marital property. He further asserts that the trial court erred in valuing the appreciation of the value of the land at $70,000 and not $54,700.

The record contains a court-ordered appraisal valuing the real property in the amount of $110,000. The record also contains Wilson County Real Estate Assessment Data for the 2009 tax year listing a market value in the amount of $162,100 and land use value in the amount of $53,600. In his brief, Mr. Melvin asserts that $53,600 is the correct value of the property, but states that he objected and continues to object to the data as hearsay. Mr. Melvin forwards no evidence, therefore, to support his contention that the trial court erred by accepting the $110,000 appraisal.

When dividing property, the trial court must divide the marital estate equitably. Tenn. Code Ann. § 36-4-121(a)(1)(2010); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). The factors to be considered by the trial court when dividing the marital estate are set forth in § 36-4-121(c) of the Tennessee Code. An equitable division of marital property does not require a precisely equal division of marital assets, but requires a fair final result. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn.2002); *Batson*, 769 S.W.2d at 859. Additionally, the trial court may adjust the division of marital property to assist the economically disadvantaged spouse when there is a disparity between the parties' relative earning capacities. *Robertson*, 76 S.W.3d at 341. Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are afforded great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App.2002). Accordingly, we will not interfere with the trial court's decision unless it is contrary to the preponderance of the evidence or is based on an error of law. *Id.*

The marital estate divided by the trial court in this case included, in addition to the real property, the parties' mobile home, firearms, livestock and horses, vehicles, bank accounts and Mr. Melvin's retirement account. The trial court ordered each party to assume responsibility for debt acquired individually since the parties separated, and ordered that the parties would be responsible for their own medical expenses. In light of the entirety of the property division, we cannot say amounts awarded to Ms. Melvin arising from the value of the real property resulted in an unequitable division of property. We affirm on this issue.

We finally turn to whether the trial court erred by awarding attorney's fees to Ms. Melvin. The trial court awarded Ms. Melvin attorney's fees in the amount of $5,000. An award of attorney's fees in a divorce action constitutes alimony *in solido*. *E.g., Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). The award is within the trial court's sound discretion, and we will not disturb the award absent a clear showing of an abuse of discretion. *Id.* The award of attorneys' fees is appropriate when the one seeking the fees lacks sufficient resources to afford his or her own legal expenses, or would have to deplete his or her resources in order to pay them. *Id.* Thus, the trial court may properly award attorney's fees based upon one party's need and the other's ability to pay. *Id.*

Mr. Melvin asserts that Ms. Melvin's expenses are "illusory" and that she does not need an award of attorney's fees. He asserts that Ms. Melvin resided on the farm in Giles County rent-free until ordered to find alternate housing by the court, and that she intends to return to the farm when this matter has concluded. Mr. Melvin does not dispute, however, that at the time this matter was tried Ms. Melvin and the children were living in a rental home, and the record reflects that Ms. Melvin received approximately $200 a week for working on the Giles County farm. She apparently has no other income. Additionally, although Mr. Melvin asserts that his ability to pay was not established, he does not assert that he is unable to pay. Further, we note that this matter was continued at the request of Mr. Melvin, and that the matter was heard in its entirety twice after Mr. Melvin left the courtroom in July 2009, resulting in additional attorney's fees. In light of the entirety of the record, we cannot say the trial court abused its discretion by awarding Ms. Melvin attorney's fees.

### *Holding*

We reverse the order of the trial court denying Mr. Melvin visitation with the parties' minor children and remand to the trial court to establish a visitation schedule. The remainder of the trial court's judgment is affirmed. Costs of this appeal are taxed one-half to the Appellee, Wendy Ann Melvin, and one-half to the Appellant, Robert Lee Melvin.

_____
DAVID R. FARMER, JUDGE