# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 09, 2014 Session

## TIMOTHY JOHN McCORMICK v. STEPHANIE RENEE CROUCH McCORMICK

### Appeal from the Circuit Court for Warren County
No. 4409     Larry B. Stanley, Jr., Judge

_____

### No. M2014-00457-COA-R3-CV – Filed July 16, 2015

_____

Husband in divorce action appeals trial court's division of marital property and award of alimony *in futuro* to Wife. We affirm the trial court's division of marital property; we vacate the award of alimony *in futuro* and remand to the trial court for reconsideration.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part and Remanded.

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

Eric J. Burch, Manchester, Tennessee, for the appellant, Timothy John McCormick.

Donald N. Capparella and Elizabeth N. Sitgreaves, Nashville, Tennessee; Ryan Julian Moore and Steven R. Roller, McMinnville, Tennessee for the appellee, Stephanie Renee Crouch McCormick.

## OPINION

I.     FACTUAL AND PROCEDURAL HISTORY

Timothy John McCormick ("Husband") and Stephanie Renee Crouch McCormick ("Wife") were married in 1990; no children were born to the couple. Husband and Wife separated in 2012, and Husband filed for divorce on March 12, 2013, citing inappropriate marital conduct and irreconcilable differences. Wife filed her Answer and Counter-complaint on April 3, 2013, also citing inappropriate marital conduct and irreconcilable differences; the Counter-complaint was amended to request spousal support and her

attorney's fees and costs. On Wife's motion for spousal support *pendente lite*, the court ordered Husband that pay Wife a lump sum of $750, $300 per week during the pendency of the divorce, and that he be responsible for Wife's car payments and the electric and water bills at the marital home, pending further orders of the court.

Trial was held on January 3, 2014; both Husband and Wife testified, along with Wife's psychologist, Husband's girlfriend, and Husband's cousin. At the close of proof, the court issued an oral ruling, which was memorialized in its Final Decree entered on March 5, 2014.

The court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129. The court awarded the wife the marital home and her car, stating that she would be responsible for the debt accompanying those items; she was also awarded Wal-Mart stock valued at $35, various household items, and $8,150 cash from Husband for her interest in three cars, three boats, and a camper, all of which were awarded to him. Husband was also made responsible for the indebtedness on one of the vehicles, a truck. The court awarded Husband various household items and required him to pay off the credit card debt totaling $4,800. The parties were to share equally all the retirement benefits each earned during their marriage. The order further provided that, if Wife were successful in a pending action to recover social security disability benefits and was awarded back pay, Husband would be entitled to "one-half of said back pay which accrued during the marriage." The court awarded Wife alimony *in futuro* of $1,950 per month for 18 months, beginning February 1, 2014. On August 1, 2015, the alimony was to decrease to $1,450 per month.

Husband appeals, raising the following issues: (1) whether the trial court erred by failing to make an equitable division of the parties' marital property, and (2) whether the trial court erred in awarding the appellee alimony *in futuro* in the amount of $1,950 for 18 months and $1,450 per month thereafter. Wife seeks her attorney's fees for defending the appeal.

## II. DISCUSSION

The trial court did not make findings of fact or state its conclusion of law as to the division of marital property and the award of alimony in either the oral ruling or the Final Decree. When the trial court fails to explain the factual basis for its decisions, we may conduct a *de novo* review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to the court to make the required findings of fact and conclusions of law and enter judgment accordingly. *See Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013); *Ganzevoort v Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). We have determined, as more fully explained below, that the record

permits us to make a *de novo* review of the evidence pertaining to the division of marital property, but not of the award of spousal support.

Husband testified that he was 44 years old at the time of the hearing; that he finished high school but had no additional education besides on-the-job training; that the "tax card" value of the parties' home was $87,000,[1] though he felt it was worth between $90,000 and $95,000; that the parties owed $9,100 on the home; that the 2005 truck was worth $9,500 with $7,000 owed on it; that the Lincoln LS did not run and was worth $300 to $500 scrap value; that the 1995 Chevy Tahoe was worth $1,500; that Wife's Volvo was worth $7,000 with $6,800 owed on it; that the 1992 Bennington Alante bass boat was worth $2,300; that the pontoon was worth $3,000; that the flat-bottom boat was worth $500; and that the camper was worth $10,000. He further testified about his pension plans, which he was not eligible to receive for another 21 years, stating that he would receive $112 per month from his pension fund with former employer A.O. Smith and that he had retirement and savings benefits in the amount of $5,407 through his current employer, UTC.[2] Husband testified as to his income for 2011, 2012 and 2013; that the parties had $4,800 in credit card debt, $1,600 of which he had acquired during the couple's separation; that he had certain health conditions, including a hole in his bowel from a four-wheeler wreck, chronic obstructive pulmonary disease, Raynaud's Syndrome, and that he suffered from depression. He testified that despite his health problems, he was able to maintain his job and work overtime.

Clinical psychologist Nancy Garrison appeared on behalf of Wife, testifying that she had seen Wife in therapy once a month for the preceding year and a half and had seen

---

[1] The parties stipulated that the "tax card" value was $87,000.

[2] The testimony related to the parties' retirement accounts was sparse; counsel for the parties stipulated that Husband would receive $629 a month from his current employer when he reaches age 65; that, although the monthly payment would increase as he continued to work for the company, the parties agreed that Wife would only be entitled to half of the $629. His current employment also provided a 401(k) account, the current value of which was $11,762.94, an amount that the parties did not dispute. Wife did not testify about her Pillsbury IRA; in response to the court's questions prior to trial, her counsel stated it was worth $1,675. Neither did she testify about her $35 Wal-Mart stock, though it was identified on the Sales and Dispositions of Capital Assets schedule on the parties' 2011 tax return. Husband did not include these accounts in the Rule 7 of the Court of Appeals' Rules table in his brief; Wife's Rule 7 statement shows the following values for the retirement accounts:

| | |
|---|---|
| UTC 401K: | $11,762.94 |
| AO Smith 401K: | $112/month [Husband's valuation] |
| | $11,530.95 ($9,299.16 in 2005) [Wife's valuation] |
| Pillsbury IRA: | $1,675 |
| UTC pension: | $629/month |

the couple in marriage counseling for four months prior; that Wife has "clinically significant major depression that ranges from mild to severe," the symptoms of which "interfere with a person's ability to function and in their daily routines and in their relationships"; that Wife has had "suicidal thoughts, hopelessness, feelings of worthlessness, extreme fatigue, … [been] bedridden when she has a bad episode of depression, … [experienced] weight loss from 20 to 30 pounds from her base line weight, … [and had] difficulty falling asleep at night." She further testified that "it's difficult to predict for [Wife] what her energy levels, what her pain level and what her mood is going to be like." Ms. Garrison testified through her monthly counseling sessions and reviewing Wife's journal, she had seen Wife have "really erratic and unpredictable changes in mood. She has good days and then unexpectedly she'll have really severe episodes of depression where she is not able often at least for parts of the day to get out of bed." Ms. Garrison testified that she had advised Wife on those days to "stay home, do [her] self care … that includes maintaining nutrition, doing what stretching and exercising she can, meditation, relaxation exercise, deep breathing, muscle relaxation, [and] taking her medications as prescribed."

Wife was 46 at the time of the hearing; she testified that she dropped out of school at age 16 after completing the ninth grade; that she had worked outside the home at various jobs for most of the marriage; that she was diagnosed with fibromyalgia in 2006; that she had depression and dry eye syndrome; that she continued to work until 2009, when she was laid off due to the closing of the business where she was employed. She testified that she had drawn unemployment benefits from 2009 through 2011; during that time, she was offered her previous job again when the business reopened, but she could not take it because she "wasn't able but also financially I didn't have to because Tim was making well enough money to support he and I especially with no children." Wife testified that not being able to afford health insurance was her "worst fear." Wife did not place a value on the home, cars, or boats but testified that the marital home was in disrepair. She testified that she would not be able to work in the future; that she had applied twice for social security disability and been denied both times, but if she were successful, the benefit would include back pay from the date she was last able to work. Wife said she was able to use the Internet and was "somewhat" computer literate but did not type.

### A. Division of Property

In a divorce action, the division of the marital estate begins with classifying the parties' property as either separate or marital. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Marital property is defined as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses

as of the date of filing of a complaint for divorce . . . ." Tenn. Code Ann. § 36-4-121(b)(1). Once property has been classified as marital property, the court is to place a reasonable value on the property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990 at *11 (Tenn. Ct. App. May 13, 2003). In this matter, no issue is raised by the parties as to the classification or valuation of the parties' property.

After valuation, the trial court is to make an equitable division of the property. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. Dividing a marital estate is not a mechanical process but, rather, is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)[3], *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Although marital debt is not defined by statute, it is subject to equitable division in the same manner as marital property. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 233 (Tenn. 2010). In dividing the marital debt equitably, the trial court should "consider the following factors: (1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to pay the debt." *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003). Trial courts have wide

---

[3] Tenn. Code Ann. § 36-4-121(c) states:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

latitude in fashioning an equitable division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983), and this Court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors at Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The trial court did not assign values to the marital assets. We have reviewed the Rule 7 statements in both Husband and Wife's briefs, as well as the testimony and exhibits, and have identified the following marital assets at issue with the corresponding values, the debt encumbering the same, other debt, and the spouse to whom awarded:

| Asset: | Husband's Value: | Wife's Value | Awarded To: | Debt: |
|---|---|---|---|---|
| Marital home | $92,500 | $87,000 | Wife | $9,010 |
| 2005 Truck | $9,500 | $9,500 | Husband | $7,000 |
| 2007 Volvo | $7,000 | $7,000 | Wife | $6,800 |
| 2000 Lincoln | $300 | ----- | Husband | |
| 1995 Tahoe | $1,500 | ----- | Husband | |
| Bass Boat[4] | $2,300 | $2,650 | Husband | |
| Flat Bottom Boat | $500 | $500 | Husband | |
| Pontoon Boat | $3,000 | $3,000 | Husband | |
| Camper | $10,000 | $10,000 | Husband | |
| Riding Lawn Mower | $750 | ----- | Wife | |
| Grill[5] | $75 | $250 | Wife | |
| Freezer[6] | $150 | ----- | Husband | |
| Wal-Mart Stock | ---- | $35 | Wife | |
| UTC 401k[7] | $11,762.94 | $11,762.94 | Split | |
| AO Smith 401k | $112/month | $9,299.16 | Split | |
| Pillsbury IRA | $1,675 | $1,675 | Split | |
| UTC pension | $629/month | $629/month | Split | |

---

[4] Husband testified that he thought Wife's valuation of the bass boat at $2,650 was "a little high." When asked how much he thought the bass boat was worth, Husband replied, "23," which we take to mean "$2300." However, prior to this testimony, counsel for Husband had stipulated to the $2,650 valuation, stating "We're okay with the bass boat. That's a little high. We said $2,500 but it's close."

[5] The grill was not included in Husband's Rule 7 statement.

[6] The freezer was not included in Husband's Rule 7 statement; Wife included the asset in her statement and based its value on testimony. Given the record, we conclude that the value of the freezer is $150.

[7] See footnote 2, *supra*.

**Other Debt:**

| | | | | |
|---|---|---|---|---|
| Chase credit card | $4,800 | $4,800 | Husband | $4,800 |

The parties largely agree as to the values of their assets; they do not agree on the value of the marital home, the bass boat, and the grill. As to the home, we assign a value of $87,000, the amount stipulated as the tax value; for the bass boat, we assign a value of $2,500 in light of the testimony of Husband that it was an old boat and not worth $2,650, the amount stated by Wife's counsel in response to the court's inquiry; as to the grill, we conclude that it should be valued at $75 based on the testimony that it was approximately four years old and purchased new for $250. In light of the foregoing values, the division of the assets (excluding the future retirement benefits which were divided equally) resulted in wife receiving $94,860 (net $85,850) and Husband receiving $27,450 (net $12,950) worth of assets.[8]

Husband contends that the division is "completely inequitable" and requests an "equal" division of the marital estate. He requests in the alternative that we reverse the $8,150 cash payment awarded Wife and award him a portion of the equity in the marital home.[9] Wife does not dispute that the division of property was not equal; she argues that the evidence does not preponderate against the trial court's division and the "fact that it is not equal does not render it inequitable."

In our review of the evidence, the most relevant statutory factors to be considered in this matter are the length of the marriage, the employability and earning capacity of the parties, the financial needs of the parties, the relative ability of each party for future acquisitions of capital assets and income, and the economic circumstances of the parties at the time the division of property is to be effective.

This was a 23 year marriage; Wife, who was 46 at the time of the hearing, had not worked in approximately four years due, in part, to the closing of the business in which she was employed and in part due to her decision not to return when the business reopened; she testified that she had been diagnosed with fibromyalgia during the time she was employed; she had been seeing a psychologist for a year and a half for depression. Husband was 44 and had maintained steady employment throughout the marriage; he testified that he anticipated working for the foreseeable future; that his income in 2011

---

[8] Although the court divided various other pieces of property between the parties, such as bedroom furniture, TVs and cocktail tables, the parties did not include these items in their Rule 7 statements; they do not take issue with the court's division of those specific pieces of property on appeal and we have not included this property in our analysis.

[9] In his Rule 7 statement, Husband included as a debt assigned to him the $8,150 he was ordered to pay Wife for her interest in the vehicles, boats, and camper he was awarded; this amount should not have been included in the calculation as it was not a marital debt subject to division by the court.

was $87,568[10] and his income for 2012 was "about $79,000"; his December 26, 2013 earnings statement shows that his 2013 year-to-date earnings were $77,166.56.

The primary marital assets (other than the pension and retirement accounts) consisted of the marital home, four vehicles, three boats, a camper, a riding lawn mower, a grill, and a freezer. The marital residence and the 2007 Volvo, both of which were awarded to Wife, were encumbered in the total amount of $15,810, while the 2005 truck, awarded to Husband, was encumbered in the amount of $7,000. The court also assigned Husband the credit card debt of $4,800, $1,600 of which had been accumulated by Husband after the parties' separation.

The division of marital property does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Indeed, the trial court may adjust the division of marital property to assist the economically disadvantaged spouse when there is a disparity between the parties' relative earning capacities. *Melvin v. Melvin*, 415 S.W.3d 847, 852 (Tenn. Ct. App. 2011)(citing *Robertson*, 76 S.W.3d at 341).

Wife was not employed at the time of the divorce and had not worked for a number of years; according to her Local Rule 21.01 statement, the only cash available to her was the $600 balance in the parties' joint checking account and her IRA, which had a value of $1,500 and was to be divided with Husband. Her condition was clearly disparate to that of Husband and, as she proceeded into an uncertain future, the award of the marital residence and one automobile to her met significant immediate needs and was certainly equitable.[11] There was no evidence as to the practical or financial feasibility of selling the home, and the record does not show that Wife had the financial ability to relocate or to pay Husband for his equity in the residence. In contrast, Husband had the present ability through his employment to acquire assets and income in the future, providing the means by which to pay the credit card debt of $4,800 as well as to pay Wife $8,150 for her interest in the vehicles, boats, and camper that he was awarded.

Considering the relevant factors and the character of the assets available for division, and affording the trial court the substantial deference we give to the division of marital property, the court did not abuse its discretion in the dividing the property and debt in the manner it did. See *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2010) (holding that "[a] trial court abuses its discretion only when it applie[s] an incorrect legal

---

[10] Husband's tax return for 2011 reported wages of $87,207 and an adjusted gross income of $87,568; the explanation of compensation he received from his employer in 2011 shows compensation of $91,010, in addition to payments for income and asset protection ($295), health and wellness ($14,361) and retirement and savings ($5,407).

[11] As we consider the equities, we deem significant the fact that both the residence and the automobile were encumbered.

standard or reach[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining" (internal quotes and citations omitted).

## B. Award of Spousal Support

Trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Garfinkel v.Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). In making an award of spousal support, the court must undertake a careful balancing of the factors in Tenn. Code Ann. § 36-5-121(i)[12], the applicability of which are dependent on the unique facts and circumstances of the case. *See Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998); *see also Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). In considering the award of alimony, a trial court should consider the factors listed at Tenn. Code Ann. §36-5-121(i), but the two that are most important are "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 110 (Tenn. 2011).

In Tennessee, four distinct types of spousal support are recognized: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony.

---

[12] The factors are as follows:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(1). Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony *in futuro* or *in solido*. *Mayfield,* 95 S.W.3d at 115 (internal citations omitted). Alimony *in futuro* is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Mayfield v. Mayfield*, 95 S.W.3d 108, 115 (Tenn. 2012) (internal citations omitted). In *Gonsewski*, our Supreme Court held that "alimony *in futuro* should only be awarded when the court finds that economic rehabilitation is not feasible and long-term support is necessary." 350 S.W.3d at 109.

We review a trial court's award of spousal support applying the abuse of discretion standard. *Riggs v. Riggs*, 250 S.W.3d at 456-57 (Tenn. Ct. App. 2007 (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)). We do not second-guess a trial court's decision regarding spousal support unless it is not supported by the evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). When the trial court fails to explain the factual basis for its decisions, we may conduct a *de novo* review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to the court to make the required findings of fact and conclusions of law and enter judgment accordingly. Tenn. R. Civ. P. 52.01; *see Lovlace*, 418 S.W.3d at 36; *Ganzevoort*, 949 S.W.2d at 296.

In ordering Husband to pay alimony, the court stated:

The Plaintiff shall pay the sum of $1,950.00 per month as alimony in futuro to the Defendant for a period of eighteen (18) months beginning February 1, 2014. Beginning August 1, 2015, the Plaintiff's alimony obligation shall decrease to $1,450.00 per month and shall cease once the Plaintiff's monthly retirement benefit is paid to the Defendant. This alimony may be modified if the court makes a finding of a material change in circumstance, decrease in pay or need, if the Defendant receives social security disability, or if the Defendant remarries.

Husband contends that alimony should not have been awarded because "there is no proof that the Wife is unable to earn an income sufficient to meet her needs. Even if she is disabled at this time, a shorter term of alimony at an amount sufficient to cover her needs should be awarded."

While it is clear that Wife has a need and Husband has the ability to pay support, neither the oral ruling nor the order includes a discussion of the evidence relative to the statutory factors listed at Tenn. Code Ann. § 36-5-121(i); of particular import to this case, the record does not include a finding, required by *Gonsewski* prior to the award of

alimony *in futuro*, that economic rehabilitation is not feasible and long-term support is necessary. Further, we have no explanation of the manner in which the court determined that the particular award was appropriate.[13] In the absence of the same, we cannot determine whether the award of spousal support was an abuse of the court's discretion.

### C. Attorney's Fees

Wife has asked that she be awarded the attorney's fees she has incurred in this appeal. The decision to award a party his or her fees on appeal rests solely within the discretion of this Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In light of our disposition of the appeal, we decline to make such an award to Wife.

## III.  CONCLUSION

For the reasons set forth above, we affirm the trial court's division of the marital property and debt; we vacate the award of spousal support and remand the case for reconsideration and entry of an order which includes findings of fact and a discussion of the statutory factors considered in making the award.[14]

_____
RICHARD H. DINKINS, JUDGE

---

[13] The factual basis for setting support at $1,950 per month is not apparent from the record; further, the court did not explain its reasoning for the decrease in amount from $1,950 to $1,450 after 18 months.

[14] In affirming the division of marital property and the $8,150 award to Wife, we have acknowledged Husband's concern that the values of the assets which were divided are unequal; we hold that it is not inequitable. We encourage the trial court to consider the division of assets and debts as it reconsiders the award of alimony. *See* Tenn. Code Ann. § 36-5-121(i)(8).