IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 3, 2018

## IN RE CARTER K.

**Appeal from the Juvenile Court for Montgomery County**
**No. 16-JV-1593     Kenneth R. Goble, Judge**

_____

**No. M2017-01507-COA-R3-JV**

_____

This appeal involves a custody dispute between the unmarried parents of a minor child. Mother filed a petition in the juvenile court seeking custody of the minor child, a determination of Father's child support arrearage, the establishment of a child support order, the entry of a permanent parenting plan, and an award of attorney's fees. Mother also sought a temporary restraining order preventing Father from removing the child from her care, custody, and control.  Following several pre-trial hearings, the case proceeded to trial. At the conclusion of the trial, the juvenile court awarded visitation to Father. Within days of the trial, Mother filed a motion to vacate the juvenile court's ruling based on Mother's allegation that Father had perjured himself at the trial. Following a hearing at which Father failed to appear, the juvenile court suspended Father's visitation, and in a reversal of the its prior decision, ordered Father to pay all of Mother's attorney's fees incurred throughout the proceedings. Because we find that the juvenile court's orders fail to comply with the requirements of Tennessee Rule of Civil Procedure 52.01 such that we are unable to determine the basis for the juvenile court's decisions, we vacate the court's orders pertaining to the establishment of a permanent parenting plan, the suspension of Father's parenting time, and attorney's fees, and we remand for more detailed findings of facts and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

James R. Potter, Clarksville, Tennessee, for the appellant, Ted K.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, Whitney C.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This case involves a custody dispute between the unmarried biological parents of Carter K.[1] ("the child"). On December 2, 2016, Whitney C. ("Mother") filed a "Petition for Restraining Order, Implementation of Parenting Plan, and to Establish Child Support" in the juvenile court for Montgomery County against Ted K. ("Father").[2]

In the petition, Mother asked that the juvenile court enter a restraining order prohibiting Father from removing the minor child from her care, custody, and control pending further orders of the court because Father had repeatedly threatened to take the child and flee out of Tennessee. The petition averred that Father's girlfriend, Vanessa D. ("Girlfriend"), had recently attempted suicide and engaged in violence in the presence of Father and both of Girlfriend's own children. Among other allegations, Mother's petition also averred that Father and Girlfriend possessed illegal drugs, and that both had repeatedly threatened Mother over the phone using extreme profanity. In addition to the restraining order, Mother sought child support arrears, an order setting future child support, the entry of a permanent parenting plan naming her as the primary residential parent, and an award of her attorney's fees.

On December 5, 2016, the juvenile court issued a restraining order temporarily prohibiting Father from "removing the minor child … from the care, custody and control of his Mother."  A show cause hearing on the restraining order was set for January 6, 2017.

On January 3, 2017, Father filed an answer to Mother's petition, a motion to dismiss the restraining order, and a counter-complaint asking the juvenile court to award him custody of the minor child and child support.  Following the hearing on January 6, 2017, the juvenile court entered an order on January 20, 2017, keeping the "restraining order" in effect pending further orders of the court. In its order of January 20, 2017, denying Father's motion to dismiss the restraining order, the juvenile court made a finding that Father "has no credibility before this Court based upon his untruthful testimony[.]"

---

[1] In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. *See, e.g.*, *In re Elias Mc.*, No. M2015-01202-COA-R3-PT, 2016 WL 3995756, at *1 (Tenn. Ct. App. July 20, 2016).

[2] Carter K. was born out of wedlock, and a parenting plan was never put in place prior to these proceedings.  However, Father is named on the minor child's birth certificate, and the paternity of the child is not at issue in this case.

On January 9, 2017, Father filed a "Motion for Supervised Visitation," which Mother opposed. By order of February 17, 2017, the juvenile court denied Father's motion for temporary visitation, and again found that Father "continues to have no credibility before [the juvenile court] based upon his untruthful testimony."[3]

On March 31, 2017, Father filed a "Motion for Pendente Lite Visitation," which Mother also opposed. Following a hearing, by order of May 10, 2017, the juvenile court again denied Father's motion for temporary visitation.

Both parents submitted parenting plans, and the case went to trial before the juvenile court on June 1, 2017.

Mother testified that she had received repeated threats from Girlfriend, and that Girlfriend had repeatedly posted defamatory comments about Mother on social media. Mother testified that Girlfriend's threats and comments have caused her to become fearful of Girlfriend, and that Girlfriend's behavior has caused Mother to conclude that Girlfriend threatens the well-being of her and the minor child.

Father testified at the trial that he was no longer in a relationship with Girlfriend. Specifically, the following exchange occurred at trial:

Q: [Father's attorney] There's been a lot of talk about [Girlfriend]. [Girlfriend] was your girlfriend?
A: [Father] Correct.
Q: [Father's attorney] What is you-all's relationship status now?
A: [Father] I am single.
Q: [Father's attorney] Who ended it?
A: [Father] It was mutual. This whole ordeal was—
Q: [The Court] He's single. Does that mean he's had a divorce?
A: [Father] We—we never—we were—just fiancée. We were going to get married, and then when the court hearings started, we did not.

. . .

Q: [Father's attorney] Were you and [Girlfriend] ever married?
A: [Father] No. We put it off because of this, and then this has taken its toll on our relationship, at which point we mutually ended it.
Q: [Father's attorney] Is she any part of your life now?
A: [Father] No.

---

[3] The Honorable Ray Grimes presided over the hearings in this case held on January 3, 2017 and February 3, 2017. However, after the second hearing, Judge Grimes recused himself and was replaced by the Honorable Kenneth R. Goble.

Father admitted that he had directed profanities at Mother over the telephone, and that he witnessed Girlfriend direct profanities at Mother over the telephone on more than one occasion. Father also testified that he told the minor child that Mother would not allow Father to see him.

At the conclusion of the trial, the juvenile court judge issued an oral ruling that adopted a parenting plan that primarily addressed Father's visitation. The juvenile court judge also specifically stated in his oral ruling that he was not awarding attorney's fees to either party.

On June 7, 2017, before the juvenile court judge entered a final written order, Mother filed a "Motion to Vacate Order or Proceeding Pursuant to Tennessee Rule of Civil Procedure 60.02(2) Fraud, Misrepresentation, and/or Misconduct and/or T.R.C.P. 60.02(5)." Mother alleged that, despite his testimony at trial to the contrary, Father had married Girlfriend approximately two weeks prior to the trial. Mother asked that the juvenile court vacate its ruling based upon the false testimony, suspend Father's parenting time, and hold Father in contempt for perjury.

On June 8, 2017, Father's attorney filed a motion to withdraw. He averred in the motion that in spite of Father's testimony at trial on June 1, 2017, that he was single and no longer in a relationship with Girlfriend, he learned, subsequent to the trial, that Father had, in fact, married Girlfriend on May 15, 2017.

On June 8, 2017, the juvenile court held a hearing on Mother's motion to vacate and on Father's attorney's motion to withdraw. Father did not appear at the hearing. The juvenile court judge orally granted Father's attorney's motion to withdraw and suspended Father's visitation pending further orders of the court. On June 26, 2017, the juvenile court entered four orders. These orders included an Agreed Order awarding Mother a child support arrearage of $33,880.00 and setting Father's monthly child support payment;[4] an order setting out its decision following the June 1, 2017 hearing (henceforth, the "Parenting Plan Order"); and an order reflecting the juvenile court's decision following the June 8, 2017 hearing (henceforth, the "Vacate Order"). The Parenting Plan Order set visitation and designated other parameters typically found in a parenting plan. The Parenting Plan Order also stated that the juvenile court was not awarding either party their attorneys' fees. On the other hand, in the Vacate Order the juvenile court reversed its decision in the Parenting Plan Order and awarded Mother "all of her attorney fees and costs expended by her throughout these proceedings." Also, in the Vacate Order, the juvenile court suspended all of Father's visitation pending further orders, specifically stating, "[t]he Respondent must return before this Court if he wishes

---

[4] The Agreed Order establishing the child support arrearage and setting monthly child support is not a subject of this appeal. The child support worksheets attached to the Agreed Order reflected that Mother is the child's primary residential parent.

to have visitation with the minor child and he faces ten (10) days incarceration for contempt." Additionally, the juvenile court granted Father's attorney's motion to withdraw. Lastly, the juvenile court entered a fourth order compelling Father to pay Mother $21,127.00 for all of her attorney's fees and costs.

On June 26, 2017, Father filed a notice of appeal to this Court, but he also filed a Tennessee Rule of Civil Procedure 59.04 motion to amend the Agreed Order with the juvenile court. On September 6, 2017, the juvenile court entered an order, submitted by Father's new attorney, striking Father's Rule 59.04 motion. Accordingly, this appeal is properly before us.

## ISSUES PRESENTED

Father raises the following issues for our review, restated verbatim as follows:

1. Did the trial court err in failing to make required finding[s] of fact and conclusions of law in its ruling pursuant to [Tennessee Code Annotated Section] 36-6-106(a) and Tennessee Rule of Civil Procedure 52.01?

2. Did the trial court err in suspending Father's visitation solely upon a finding that he had committed perjury?

3. Did the trial court err in assessing Attorney Fees in the June 8, 2017 hearing?

In the posture of Appellee, Mother raises the following issue for our review:

4. Whether Mother should be awarded her attorney's fees for the cost of this appeal?

## STANDARD OF REVIEW

In an appeal from a bench trial, we review the factual findings of the juvenile court *de novo* upon the record, with a presumption of correctness. *See* Tenn. R. App. P. 13(d); *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004). We will not disturb the juvenile court's factual findings unless the evidence in the record preponderates against those findings. *Johnson*, 165 S.W.3d at 645 (citing Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). However, we review the juvenile court's legal conclusions *de novo* with no presumption of correctness. *Id*. (citing *S. Constructors, Inc. v. Loudon Cty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

Trial courts are vested with wide discretion when determining the details of custody arrangements. *See In re Grace N.*, No. M2016-00453-COA-R3-JV, 2017 WL 4402232, at \*4 (Tenn. Ct. App. Sept. 27, 2017) (citation omitted). Because they are able to observe the witnesses and make credibility determinations, the trial courts are in a better position than appellate courts to fashion an arrangement that serves the best interest of the child. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). Accordingly, we review the trial court's decisions regarding custody arrangements under an abuse of discretion standard. *Id.* (citation omitted). While the abuse of discretion standard affords deference to the trial court's decisions, it does not immunize a trial court's decision from appellate review. *In re Grace N.*, 2017 WL 4402232, at \*4 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)). "A trial court abuses its discretion when 'it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of evidence.'" *Id.* (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *See Kelly*, 445 S.W.3d at 692 (quoting *Armbrister*, 414 S.W.3d at 693).

**DISCUSSION**

When making an initial custody determination, juvenile courts must consider a variety of statutorily enumerated factors before establishing a residential parenting schedule. *See* Tenn. Code Ann. § 36-6-106. "Out of all of the factors which may be relevant in a given case, the welfare and best interest of the child must be the court's paramount concerns." *See In re Emma E.*, No. M2008-02212-COA-R3-JV, 2010 WL 565630, at \*5 (Tenn. Ct. App. Feb. 17, 2010) (quoting *Darvarmanesh v. Gharacholou*, No. M2004–00262–COA–R3–CV, 2005 WL 1684050, at \*3 (Tenn. Ct. App. July 19, 2005)). "In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child" while also taking into consideration the enumerated statutory factors. Tenn. Code Ann. § 36-6-106.[5]

---

[5] These factors include the following: the child's need for stability; the strength, nature, and stability of the child's relationship with each parent, including whether one parent has performed the majority of parenting responsibilities relating to the daily needs of the child; each parent's past or potential for future parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child; refusal to attend a court ordered parent education seminar; the love, affection, and emotional ties existing between each parent and the child; and any other factors bearing on the child's best interest. Tenn. Code Ann. § 36-6-106.

We begin with Father's argument that the juvenile court erred in failing to make specific findings of fact to support its judgment in this custody dispute. "In bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *See In re Noah J.*, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at \*4 (Tenn. Ct. App. Mar. 11, 2015) (quoting *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at \*3 (Tenn. Ct. App. Dec. 27, 2012)). Tennessee Rule of Civil Procedure 52.01 states, in pertinent part:

> [i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

"Simply stating the trial court's decision, without more, does not fulfill this mandate." *In re Noah J.*, 2015 WL 1332665, at \*4 (quoting *Barnes v. Barnes*, No. M2011–01824–COA–R3–CV, 2012 WL 5266382, at \*8 (Tenn. Ct. App. Oct. 24, 2012)). In part, the rationale behind the mandate of Tennessee Rule of Civil Procedure 52 is that it facilitates meaningful appellate review by providing a clear articulation of the basis of the trial court's decision. *Gooding v. Gooding*, 477 S.W.3d 774, 776 (Tenn. Ct. App. 2015); *In re Noah J.*, 2015 WL 1332665, at \*4 ("Findings and conclusions serve the important purposes of facilitating appellate review and promoting the just and speedy resolution of appeals.").

In custody disputes, our task on appeal is generally to determine whether the trial court abused its discretion in fashioning the particular parenting arrangement. *In re Noah J.*, 2015 WL 1332665, at \*5. As we stated earlier, "[a] trial court abuses its discretion when 'it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of evidence." *In re Grace N.*, 2017 WL 4402232, at \*4 (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

However, absent findings of facts and conclusions of law, "this [C]ourt is left to wonder on what basis the court reached its ultimate decision." *Gooding*, 477 S.W.3d at 782 (quoting *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at \*10 (Tenn. Ct. App. Feb. 10, 2015)). Unfortunately, the Parenting Plan Order and Vacate Order do not sufficiently articulate the factual and legal basis relied upon by the juvenile court for us to determine whether the juvenile court appropriately exercised its judgment in fashioning the initial parenting plan or suspending Father's visitation.

For example, the juvenile court made only the following factual findings in the Parenting Plan Order:

1. That Father has made bad choices even per his own testimony. [Girlfriend] is not the first bad choice Father has made in his relationship choices.

2. That although there was no testimony that the Father himself may harm the child, there could be a risk of harm to the child with Father per his willingness to fabricate stories in the past and the possibility he will begin again in the future, and by those whom Father chooses to be in a relationship with who are allowed to be around the child.

The juvenile court went on to outline more detailed provisions concerning the parenting plan. However, nothing in the juvenile court's Parenting Plan Order indicates that the court considered the applicable statutory factors, or explains why the parenting plan is in the minor child's best interest.

It appears to this Court that the juvenile court fashioned the Parenting Plan Order based, at least in part, upon the juvenile court's perception that Father lacks credibility and has made bad decisions in the past. However, the Parenting Plan Order lacks any findings concerning the minor child's best interest, or how his best interest is affected by Father's willingness to prevaricate. The juvenile court must make specific findings to support its conclusion that imposition of the ordered parenting plan is in the child's best interest in light of the statutory factors. Tenn. Code Ann. § 36-6-106; Tenn. R. Civ. P. 52.01.

Mother points to several facts, which she argues support the juvenile court's decision, including the fact that she has been the child's primary caregiver throughout his life and Father has failed to pay meaningful support. While we agree that these facts, if found, would weigh in favor of Mother, these are not the only factors the juvenile court is directed to consider when establishing a custody arrangement consistent with the best interest of the child. *See* Tenn. Code Ann. § 36-6-106. While "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," the statute nevertheless "requires the trial court to *consider* all the applicable factors." *See In re Conner S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *7 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010)) (emphasis added).

The Vacate Order also fails to comply with Tennessee Rule of Civil Procedure 52.01. The juvenile court's Vacate Order states, in part:

1. That all of the Respondent, [Father's] visitation is suspended pending further Orders of this Court.

2. That based upon the revelations that perjury was committed by the Respondent at June 1, 2017 hearing, specifically finding that he is in fact married to his previous girlfriend, although he testified that he was single and broken up with his girlfriend, the Respondent continues to have no credibility before this Court.

3. That the Respondent must return before this Court if he wishes to have visitation with the minor child, and he faces ten (10) days incarceration for contempt.

4. That the Respondent's child support obligation shall be calculated as previously ordered at the June 1, 2017 hearing.

5. That the Petitioner [Mother], is awarded a judgment against the Respondent, [Father], for all of her attorney fees and costs expended by her throughout these proceedings. The petitioner shall submit a separate Affidavit of attorney fees and costs, along with an Order granting the same.

6. That John D. Parker's Motion to Withdraw is hereby granted.

Although the juvenile court is afforded considerable discretion in matters of child custody, the least restrictive visitation limits generally are favored in order to encourage the parent-child relationship. *Melvin v. Melvin*, 415 S.W.3d 847, 851 (Tenn. Ct. App. 2011) (citation omitted). Terminating all visitation "has the practical effect of terminating the parent-child relationship, and accordingly *must be supported by specific findings that visitation by the non-custodial parent will result in physical, emotional, or moral harm to the child." Id*. (emphasis added).

The juvenile court's Vacate Order suspending Father's visitation clearly lacks a specific finding that visitation by Father will likely result in physical, emotional, or moral harm to the minor child. However, we take note that the juvenile court previously indicated that it is the people that Father has allowed to be around the child that may pose a threat of harm to the minor child. Indeed, the juvenile court may conclude that suspension of Father's parental rights is in the child's best interest. *See* Tenn. Code Ann. § 36-6-406(d)(1)-(8) (providing the grounds upon which a parent's rights may be suspended). However, the juvenile court must set out its findings and conclusions in its order. Tenn. R. Civ. P. 52.01.

When a trial court fails to explain the basis of its decision, we are severely hampered in performing our reviewing function, and we may remand the case with instructions to make requisite findings of fact and conclusions of law and enter judgment accordingly. *See In re Noah J.*, 2015 WL 1332665, at *5–6 ("One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01

- 9 -

requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions."). In this case, we vacate the Parenting Plan Order and the Vacate Order and remand for the juvenile court to make more detailed findings of fact and conclusions of law and enter judgment in compliance with Tennessee Rule of Civil Procedure 52.01. Our vacating of these orders in no way implicates the Agreed Order awarding Mother a child support arrearage from Father and setting Father's child support for his minor child.[6]

It is clear from our review of the record, that there is evidence of Father's extreme lack of judgment and bad decision-making. His willingness to allegedly perjure himself in open court concerning his marital status and relationship with Girlfriend draws serious questions concerning Father's integrity and character. We recognize, however, that lives and events have not stood still while this custody dispute has been in the courts. *Id*. at *6 (citation omitted). This Opinion should not be construed as preventing the juvenile court from allowing the parties to put on additional evidence regarding the child custody issue on remand, including how the parties' circumstances may have changed since the entry of the June 26, 2017 orders. *Id.* In light of the passage of time and events taking place in the lives at stake, the juvenile court may, in its discretion, consider additional evidence to ensure that any custody order is based on the parties' current actual circumstances. *Id*. (citation omitted).

## ATTORNEY FEES

Father claims that the juvenile court abused its discretion by awarding attorney fees to Mother and claims that the amount awarded was unreasonable. Mother argues that Father's appeal is frivolous, and that she should be awarded the costs of her attorney's fees incurred during this appeal. *See* Tenn. Code Ann. § 27-1-122.

Tennessee generally follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco, Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

However, Tennessee Code Annotated Section 36-5-103(c) provides a right to recover attorney fees in custody and child support disputes. At the trial on June 1, 2017,

---

[6] As stated above, the Agreed Order establishing the child support arrearage and setting monthly child support is not a subject of this appeal. The child support worksheets attached to the Agreed Order reflected that Mother is the child's primary residential parent.

and in the Parenting Plan Order, the juvenile court initially denied Mother's request for an award of attorney fees. However, at the hearing on June 8, 2017, and in the Vacate Order, the juvenile court reversed its prior decision and awarded Mother "all of her attorney fees and costs expended by her throughout these proceedings." Moreover, in its "Order for Attorney Fees and Costs," entered on June 26, 2017, the juvenile court, without further findings, ordered Father to pay Mother $21,127.00 in attorney fees and costs.[7] In light of the circumstances of this case and our decision to vacate the Parenting Plan and Vacate Orders, we vacate the award of attorney's fees and remand the case to the juvenile court to make specific findings of fact and conclusions of law as to the basis and reasonableness of the award of attorney fees to Mother.

Mother also requests that we award her the cost of her attorney's fees incurred during this appeal. Tennessee Code Annotated Section 27-1-122 provides for an award of sanctions in the form of attorney's fees on appeal when an appeal is determined to be frivolous. "A frivolous appeal is an appeal that is so devoid of merit that it has no reasonable chance of succeeding." *Glanton v. Lord*, 183 S.W.3d 391, 401 (Tenn. Ct. App. 2005) (citation omitted). Determining whether to award attorney fees on appeal is a discretionary decision. *Id.* (citation omitted). In light of our decision herein, we exercise our discretion and respectfully decline to grant Mother an award of her attorneys' fees incurred during this appeal.

## CONCLUSION

The orders of the juvenile court referencing the hearing of June 1, 2017, the Parenting Plan Order, and the order referencing the hearing of June 8, 2017, the Vacate Order, as well as the order granting Mother's attorney's fees and costs, each entered on June 26, 2017, are vacated. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the Appeal are taxed one-half to the Appellant, Ted K., and one-half to Appellee, Whitney C., for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[7] An Affidavit of "Attorney Fee and Costs" was filed with the juvenile court by Mother's attorney on June 7, 2017. The affidavit contained the attorney's billable hours and the total fees and expenses incurred by Mother accompanied by a one paragraph summary of the work performed.