IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2025 Session

**MARK E. HATLEY v. ANN E. HATLEY**

**Appeal from the Chancery Court for Shelby County**
**No. CH-21-1195     Jim Kyle, Chancellor**
_____

**No. W2023-01694-COA-R3-CV**
_____

This is a divorce case following a long-term marriage. Wife appeals the trial court's: 1) valuation and distribution of marital property and allocation of debt; 2) award of transitional alimony; 3) downward deviation of Husband's child support obligation; and 4) denial of her request for her attorney's fees to be paid from the marital estate. We affirm the trial court's valuation of property; vacate the trial court's division of marital debt, in part; vacate the alimony award; and reverse the court's downward deviation from the Child Support Guidelines. We remand for further proceedings consistent with this Opinion.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Vacated in Part, Reversed in Part, and Remanded**


VALERIE L. SMITH, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.


Stephen F. Libby, Memphis, Tennessee, for the appellant, Ann E. Hatley.

Nick Rice and Chelsea Knox, Memphis, Tennessee, for the appellee, Mark E. Hatley.


**MEMORANDUM OPINION[1]**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

# I. BACKGROUND AND PROCEDURAL HISTORY

Anne E. Hatley ("Wife") and Mark E. Hatley ("Husband") were married in Texas in June 1999. At the time of the marriage, Husband was a medical resident and Wife was completing her undergraduate degree in philosophy. This was the first marriage for both parties, and four children were born of the marriage. In 2011, Husband accepted a position with St. Jude Children's Research Hospital ("St. Jude"), and the parties relocated to Memphis, Tennessee. Husband continues to practice medicine as an oncologist at St. Jude; Wife has primarily been a homemaker and caretaker of the parties' children.

In August 2021, Husband filed a complaint for divorce in the Chancery Court for Shelby County ("the trial court"). In his complaint, Husband prayed for a divorce on the grounds of irreconcilable differences, inappropriate marital conduct, and intolerable conditions; alimony; and attorney's fees. Husband also asserted that Wife had removed the parties' three minor children from school without Husband's knowledge or consent, refused to respond to his inquiries regarding the children's education, and was attempting to alienate the children from him. Husband asked to be designated primary residential parent, as well as child support and the imposition of a lien on property to ensure child support. Husband also prayed for Wife to be required to obtain life insurance to secure child support and for the approval of a marital dissolution agreement ("MDA") or property division pursuant to Tennessee Code Annotated section 36-4-121.

In September 2021, Wife filed an answer and counter-complaint for divorce. In her answer, Wife asserted that the parties' eldest child is a type-1 diabetic, making her susceptible to serious illness should she contract COVID-19. She further asserted that the parties had agreed to delay the minor children's return to school until the youngest child was able to be fully vaccinated against COVID. She denied taking any action to alienate the children from Husband and asserted that Husband had not told Wife or the children where he was living. She denied that she was able to pay spousal or child support. Wife admitted that irreconcilable differences had arisen between the parties and denied Husband's allegations of inappropriate marital conduct and intolerable conditions. Wife counter-complained for a divorce and prayed to be named primary residential parent of the parties' children. She also prayed for child support; spousal support; health insurance for herself and the parties' children; life insurance designating Wife as beneficiary to secure child support; an award of her separate property; and an equitable division of the marital estate.

---

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

After protracted, acrimonious proceedings, the trial court heard the matter on July 12, 17, 18, and 19, 2023, and entered the final decree of divorce and permanent parenting plan on November 3, 2023. The trial court found that both parties were at fault for the deterioration of their marriage and declared the parties divorced pursuant to Tennessee Code Annotated section 36-4-129(b). The court stated that Husband had announced at trial that he sought visitation and not custody. Accordingly, the trial court named Wife as primary residential parent of the two children who remained minors and awarded Husband 80 days of parenting time. The court classified and divided the parties' property and debt; awarded Wife transitional alimony; and denied the parties' requests for attorney's fees.

On November 22, 2023, Husband filed a "Motion for Clarification of Ruling." On December 7, Wife filed a "Cross-Motion for Clarification and/or to Modify Ruling." On December 8, 2023, Wife filed a notice of appeal in this Court. After extended proceedings on the parties' motions to clarify and the designation of the appellate record, the parties' motions were heard by a special judge on July 31, 2024. The trial court determined that the parties' motions to clarify constituted Tennessee Rules of Civil Procedure Rule 59 motions to alter or amend the trial court's judgment and denied the motions. The trial court denied and dismissed any outstanding motions or requests for relief and entered a final judgment in the matter on August 22, 2024. This appeal ensued.

## II. ISSUES PRESENTED

In her appellate brief, Wife presents thirteen issues for review. The determinative issues, as we consolidate and restate them, are:

1. Whether the trial court erred in its valuation and division of marital property and debt.

2. Whether the trial court erred in its award of alimony.

3. Whether the trial court erred in awarding Wife only seven months of health insurance.

4. Whether the trial court erred in deviating downward from the Child Support Guidelines by allowing Husband to deduct the cost of reunification therapy from his child support obligation.

5. Whether the trial court erred in denying the parties' "motions to clarify."

6. Whether the trial court erred in denying Wife's request for attorney's fees. Wife additionally requests attorney's fees on appeal.

## III. STANDARD OF REVIEW

This is a non-jury case. Accordingly, our review of the trial court's findings of fact is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012). The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted). Therefore, the trial court's factual findings must contain sufficient underlying facts that clearly disclose the basis of the court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted). Appellate review of a trial court's conclusions of law is *de novo* with no presumption of correctness. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).

## IV. ANALYSIS

We begin our discussion with some preliminary observations. This was a 24-year marriage that began when Husband was a medical resident. Wife has an undergraduate degree and contributed to the parties' income until Husband became established in his medical career. At the time of trial, Husband was 52 years of age, and Wife was 56. When the final decree of divorce was entered, Husband earned more than $330,000 per year as a pediatric oncologist and, during the pendency of the divorce, Husband's salary increased by $91,000. Although Wife briefly – and it appears unsuccessfully – tried her hand at "house flipping," she has not worked outside the home since the birth of the parties' first child more than 20 years ago. However, Wife receives payments from oil and gas royalties that she inherited from her parents. The parties dispute the amount of the royalties received by Wife – Husband submits Wife receives approximately $140,000 per year and Wife submits she receives approximately $48,000 per year. The trial court found that, although the parties disputed the amount of Wife's annual royalty income, "there was proof that [Wife] has unexpectedly received substantial windfall payments on numerous occasions in the past" and that "both parties are capable of acquiring future assets." Additionally, the trial court found that Wife "utilized substantial separate funds" to pay marital bills, and Husband acknowledged that a significant portion of a $74,000 inheritance that Wife received in 2021 was used to pay off the parties' credit card debt. Husband is in excellent health; Wife contends that she suffers back pain and has been diagnosed with a variety of medical conditions for which she takes prescription medication. Wife also regularly smokes marijuana at night. The trial court found that both parties contributed to the deterioration of their marriage; Wife was substantially economically disadvantaged; and Wife has refused return to work or to adjust her style of living. When the trial court entered the permanent parenting plan in 2023, two of the parties' children were minors; one is currently a minor. With these facts in mind, we turn to the issues presented for review.

# 1. DIVISION OF PROPERTY

Under Tennessee Code Annotated section 36-5-121(i), the division of marital property and the amount of each party's separate property impact any award of spousal support. Therefore, we turn first to the trial court's classification and division of the parties' property and debt. Tennessee is a "dual property" state and recognizes both marital property and separate property in a divorce action. *Larsen-Ball v. Ball*, 301 S.W.3d, 228, 213 (Tenn. 2010) (citations omitted). Accordingly, the Tennessee divorce statutes require the trial court to first classify the parties' property as either marital or separate before dividing a marital estate. *Id*. The court must then equitably divide the marital estate. *Id*. (citation omitted). Marital debt is also subject to equitable division. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003).

Courts have emphasized that the statutes require an equitable division of marital property, not an equal division. *Larsen-Ball*, 391 S.W.3d at 231. "An equitable division of marital property does not require a precisely equal division of marital assets, but requires a fair final result." *Melvin v. Melvin*, 415 S.W.3d 847, 852 (Tenn. Ct. App. 2011) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988)). Accordingly, this Court repeatedly has emphasized that "[a] trial court is charged not with making an equitable division of each separate marital asset but rather with making an equitable division of the entire marital estate." *Stark v. Stark*, No. W2020-01692-COA-R3-CV, 2022 WL 1744695, at *18 (Tenn. Ct. App. May 31, 2022) (quoting *Tarver v. Tarver*, No. W2017-01556-COA-R3-CV, 2019 WL 1200274, at *13 (Tenn. Ct. App. Mar. 13, 2019) (quoting *Givens v. Givens*, No. E2016-00865-COA-R3-CV, 2017 WL 4339489, at *8 (Tenn. Ct. App. Sept. 29, 2017))).

"[T]he division of marital property is not a mechanical process" and "the trial court should weigh the most relevant [statutory] factors in light of the facts of each case." *Larsen-Ball v. Ball*, 301 S.W.3d at 234 (citations omitted). Further, "[t]rial courts have wide latitude in fashioning an equitable division of marital property[.]" *Ludlow v. Ludlow*, 450 S.W.3d 105, 110 (Tenn. Ct. App. 2014) (citing *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983)). Therefore, we give great weight on appeal to the trial court's determination when classifying and dividing a marital estate. *See id.*

Tennessee Code Annotated section 36-4-121 governs the division of property in a divorce action. The statute provides, in relevant part:

> (a)(1) In all actions for divorce or legal separation, prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, the court having jurisdiction thereof shall:

> (A) Equitably divide, distribute, or assign the marital property between the parties without regard to marital fault in proportions as the court deems just

based on the factors set forth in subsection (c); and

(B) Allocate responsibility for paying the marital debt in proportions as the court deems just based on the factors set forth in subsection (i). The court may order the payment of all or a portion of the marital debt from the marital property prior to distribution of the marital property to the parties.

. . . .

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse;

(12) Such other factors as are necessary to consider the equities between the parties; and

(13) The total amount of attorney fees and expenses paid by each party in connection with the proceedings; whether the attorney fees and expenses were paid from marital property, separate property, or funds borrowed by a party; and the reasonableness, under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct, and necessity of the attorney fees and expenses paid by each party;

. . . .

(i)(1) In allocating responsibility for the payment of marital debt, the court shall consider the following factors:

(A) The purpose of the debt;

(B) Which party incurred the debt;

(C) Which party benefitted from incurring the debt; and

(D) Which party is best able to repay the debt.

(2) In allocating responsibility for payment of unpaid attorney fees and expenses incurred in connection with the proceedings, the court shall consider the factors in subdivision (i)(1) and the following factors:

(A) The total amount of attorney fees and expenses incurred by each party in connection with the proceedings;

(B) The total amount of attorney fees and expenses paid by each party in connection with the proceedings;

(C) Whether the attorney fees and expenses incurred by each party are reasonable under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct; and

(D) Whether the attorney fees and expenses were necessary.

(3) The court may order the payment of all or a portion of the marital debt from the marital property prior to the allocation of responsibility for paying marital debt by either party, and may charge the party's share of the marital estate with all or a portion of the attorney fees and expenses paid by that party.

Tenn. Code Ann. § 36-4-121.

We begin our discussion by observing that the trial court made numerous findings of fact with respect to most of the statutory factors. The court determined that Wife's oil and gas royalties and three of the parties' six vehicles were Wife's separate property and found that Husband had no separate property. The trial court valued the parties' net marital assets at $614,194 – including Husband's retirement savings and the marital residence. The trial court awarded each party approximately 50% of the net value of the marital estate.

As Wife asserts in her appellate brief, the marital property awarded to Wife consists primarily of non-liquid assets: the marital home, home furnishings valued at $20,000, and an oriental rug "Chinese rug" that Wife valued at 40,000. The trial court valued the marital home at $690,000 and assigned debt associated with the home – totaling $491,715 – to Wife. Husband's retirement account comprises the primary marital asset. The court valued the retirement account at $407,882 and awarded $335,607.50 to Husband and $72,274.50 to Wife. The trial court assigned Husband's remaining student loans and credit card debt associated with Husband's attorney's fees to Husband. The court equally divided the remainder of the parties' marital debt and assigned a 2022 tax debt relating to Wife's separate property to Wife.

In her brief, Wife argues that the court's division of property leaves her without sufficient liquid assets to pay the debt assigned to her. She asserts that the trial court erred in dividing the parties' debt; assessing 100 percent of 2022 taxes related to her separate property to her; failing to allow her to charge her attorney's fees against the marital estate; valuing a "garage-sale rug" at $40,000; valuing Wife's share of home furnishings at $20,000 while failing to assign any value to Husband's home furnishings; and awarding Husband an additional $60,000 in retirement benefits to offset or equalize the award of

- 8 -

marital property.

We turn first to the trial court's valuation of the rug in question. In its November 2023 decree of divorce, the trial court found:

> 88. Wife testified that she purchased a rug from Costco for $1,200.00 last year during the marriage.
>
> 89. Wife testified that the rug is a 150-year-old Chinese rug that was hand-knotted, rare, and in impeccable condition.
>
> 90. Although she admits she has not had it appraised, the only proof regarding the rug's value was Wife's testimony that she believes the rug is now worth $40,000.00.
>
> 91. Accordingly, the Court finds that the rug, with a value of $40,000.00, should be awarded to Wife.

On appeal, Wife asserts she testified at trial that she "misspoke" regarding the value of the rug and that she had not yet had it appraised. She argues, in essence, that the trial court erred by not allowing her to retract her estimation of the value of the rug. Upon review of the record, we observe the following testimony by Wife upon questioning by Husband's counsel:

> Q. You claim that you took out this Costco card for the MLG&W emergency that you saw coming; correct?
> A. Yes. And I also got a rug that I'd been -- that I bought a rug off as well, and I took care of some other expenses.
> Q. Okay. Because you had a rug emergency; correct?
> A. No. It was just a rug that I bought for twelve hundred dollars that is now worth forty thousand dollars.
> Q. Sure. All right. Now, on this Costco card, you spent two thousand eight hundred ninety-seven dollars and fifty-five cents before you even made any expense in relation to LG&W; correct?
> A. Because I was out of money. Yes.
> Q. Okay. Okay. And you bought this rug during your marriage; correct?
> A. I bought it. Yes. Well, last year. Just last year.
> Q. Okay. And you're still married; correct?
> A. Correct.
> Q. Okay. Now, this forty-thousand-dollar rug is nowhere on your assets --
> A. Well, I haven't had it appraised yet. I mean, I just bought a rug -- I just like to buy things that are -- in estate sales that are good deals, and then I hold on to them and then eventually get them cleaned up and appraised, and then

I put them on the floor. And then if there's a fire in the house, my five-hundred-dollar rug gets me an extra twenty thousand dollars on my insurance.

Q. Okay. Well, you just told me that that rug is valued –

A. Well, I have to go get it -- my appraiser

I'm sorry. I didn't let you finish. I apologize.

Q. All right. Now, you just told me your rug is valued at forty thousand dollars, and you're the owner of that rug; correct?

A. I should say that it will be valued once I pay for the appraisal, but the unofficial appraisal prior to having to pay the five hundred dollars for the appraisal is very good. Yes.

Q. And you just told me it's valued at forty thousand dollars; correct?

A. Well, I misspoke in saying that. I don't have it on paper correctly because I don't have the money to pay for the appraisal right now.

Q. I didn't ask if you had it on paper. I asked you, as the owner, if you just told me this rug is worth forty thousand dollars.

.

Although he did not make a formal objection, Wife's counsel asserted that further questioning was repetitive and the trial court stated:

THE COURT: From my standpoint, we need to know what assets are out there and what assets are not. I've been pretty lenient, . . . And my impression is that if you bought an asset that increases in value, then, it changes character. It's becoming an investment and not a debt.

Questioning by Husband's counsel continued:

Q. You just told me as the owner, that it's valued at forty thousand dollars. Yes?

A. It's a hundred and fifty-year-old Chinese rug that was hand knotted that is an individual rug that's hard to find. It's in impeccable condition. It just needs to be appraised.

Q. Instead of figuring out how to keep talking and not answering my question, just answer the question.

. . . .

Q. You just told me that rug is valued at forty thousand dollars.

THE COURT: You did testify to that, ma'am, and it's a simple question. Answer it. Yes or no.

A. Yes.

We must disagree with Wife's characterization of her testimony at trial. Further, it is well settled that an owner of property is deemed competent to testify as to the value of

their property. *Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004). Wife testified under oath that she believed the rug was valuable and potentially worth $40,000. She now seeks to disavow her own testimony, but the evidence does not preponderate against the trial court's finding on this issue.

We turn next to Wife's assertion that the trial court erred by failing to assign value to Husband's household furnishings. Although Wife argues that the trial court erred by not assigning value to Husband's household furnishings, she states:

> Nowhere in the over 1,000-page transcript of the trial testimony was there any testimony regarding the valuation of the furniture that was at Wife's home or Husband's home. There was a reference in Husband's Second Amended Rule 14(d) that Husband "estimated" that the "Furniture/other items in the marital home" should be awarded to Wife with a valuation of $20,000, however, there was absolutely no testimony on the issue and no testimony regarding any specific furniture or property awarded to either Husband or Wife. . . . While Husband obviously has furnishings where he lives, the Court did not allocate ANY valuation to Husband for his personal property, even for the assets awarded to him in the Final Decree. Notwithstanding, the Court valued said furnishings at $20,000, awarded the furnishings to Wife and deducted $20,000 from funds Wife would have otherwise been received from Husband's retirement account and awarded same to Husband.

From our review of the record, we observe that, in his July 7, 2023, "Second Amended 14(d)," Husband assigned an estimated value of $20,000 to the furnishings in the marital home. Wife submitted a supplemental Rule 14 listing of assets and values on July 11 but did not supply a proposed value of the marital household furnishing or propose a value for Husband's furnishings. Wife points us to nothing in the record that would preponderate against the trial court's valuation of the furnishings in the marital home. Further, as Wife acknowledges, there is nothing in the more than 1,000-page trial transcript to demonstrate that she sought to elicit a value from Husband regarding his household furnishings. Rule 36 of the Tennessee Rules of Appellate Procedure states: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); *Naylor v. Naylor*, No. W2016-00038-COA-R3-CV, 2016 WL 3923790, at *5 (Tenn. Ct. App. July 15, 2016). Wife offered no proof regarding the value of Husband's household furnishings, and we therefore decline to find error on the part of the trial court on this issue. *See Naylor*, 2016 WL 3923790, at *6.

We turn next to the 2022 tax debt assigned to Wife. In her brief, Wife asserts that, in 2022, she received approximately $110,000 from inheritance payments and her monthly oil and gas royalty payments. She asserts that taxes were not withheld from the payments and that she "reasonably believed" that she and Husband would continue to file joint tax

returns for 2022.  She further argues that she used a "substantial portion" of her separate funds to make improvements to the marital residence and that "the [c]ourt: 1) divided the value of the marital residence 50/50, without giving Wife any credit for the substantial investments she made of separate funds that increased the value of the marital residence[.]"

There is no dispute that the 2022 tax liability is associated with Wife's separate property.  Further, it is also undisputed that Husband continued to pay the household expenses during the pendency of this matter; Wife chose to use her separate funds to make improvements to the marital residence, apparently without input from Husband; and, when the trial court entered its decree of divorce in November 2023, the tax liability due on Wife's 2022 income was undetermined.  Additionally, Husband filed his 2022 taxes separately.  We cannot say the court's assignment of the tax on Wife's separate property to Wife results in any inequity.

We turn next to the assignment of the remainder of the parties' debt.  As noted, the trial court assigned the remaining debt on Husband's student loans to Husband.  The trial court determined that most of the $20,173 balance on a Citibank credit card consisted of Husband's outstanding attorney's fees and assigned that debt to Husband.  The court determined that the remainder of the parties' credit card debt was marital debt and divided it equally between the parties.  However, other than the Citibank card, the trial court made no findings with respect to the factors enumerated in Tennessee Code Annotated section 36-4-121(i)(1) regarding the marital credit card debt.

Additionally, we observe that the trial court made no findings with respect to Tennessee Code Annotated  section 36-4-121(c)(13) and (i).  It appears that Husband paid at least a portion of his attorney's fees with marital funds, and the court denied Wife's request for attorney's fees.  The court used Husband's retirement account to "equalize" the property division – leaving Wife with few liquid assets with which to pay her attorney's fees.  Also, the trial court found that Wife contributed substantial separate property to the improvement of the marital home after the parties separated, but it does not appear that the court considered that contribution when it "equalized" the property division.  Further, it is undisputed that Husband's income is significantly more than Wife's.  Accordingly, we remand this matter to the trial court for further consideration of the division of the parties' credit card debt and equalization of Husband's retirement funds upon application of section 36-4-121(c)(13) and (i).  The division of property is otherwise affirmed.  In view of our resolution of this issue, Wife's issue with respect to the trial court's denial of her request for attorney's fees is pretermitted.

## 2. SPOUSAL SUPPORT

Tennessee Code Annotated section 36-5-121 governs spousal support and maintenance in divorce actions.  After reviewing the statutory factors, "trial courts have broad discretion when determining whether alimony is needed and, if so, the amount,

duration, and nature of the award." *Ellis v. Ellis*, 621 S.W.3d 700, 705 (Tenn. Ct. App. 2019) (citation omitted). The appropriate type and amount of spousal support is "dependent on the facts and circumstances of each case." *Id.* The obligor spouse's ability to pay and the economically disadvantaged spouse's need are the primary statutory factors to be considered. *Id.* (citing *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). However, "the disadvantaged spouse's need is the threshold consideration." *Id.* (quoting *Riggs*, 250 S.W.3d at 457).

In this case, it is undisputed that this was a marriage of long duration in which Husband was the primary wage earner. Husband earns well over $300,000 per year, while wife regularly receives approximately $4,000 per month from her separate property. Wife has additionally received lump-sum amounts from her inheritance, although the amount and frequency of such receipts is unclear. Although Wife has an undergraduate degree, she has been a homemaker since the birth of the parties' first child, who was an adult when this matter was tried. Additionally, the trial court found that "Wife helped put Husband through medical school and stayed home most of the twenty-four (24)-year marriage to take care of the kids, which helped to advance Husband's career." The court found that both parties were at fault for the demise of their marriage and that Wife is the economically disadvantaged spouse. However, although the trial court awarded Wife transitional alimony, the award is of an uncertain amount and is tied to expenses associated with the marital home, which was awarded to Wife. Additionally, both Husband and Wife moved the court to clarify the award. In July 2024, the original trial judge was unavailable, and the motions were heard by a special judge. The court construed the motions as Tennessee Rule of Civil Procedure 59 motions to alter or amend and denied them. In its order, the trial court opined that "[t]he issues set forth in the competing motions are better addressed by the appellate court."

Under Tennessee Code Annotated section 36-5-121(i)(8), the division of marital property and debt impacts the question of spousal support. Therefore, when an appellate court disturbs the trial court's division of property, it is generally necessary to vacate and remand the court's award of alimony and remand for further determination. *See Trezevant v. Trezevant*, 568 S.W.3d 595, 624 (Tenn. Ct. App. 2018); *Bailey v. Bailey*, No. M2022-01467-COA-R3-CV, 2025 WL 1517411, at *10 (Tenn. Ct. App. May 28, 2025). Here, the division of the parties' debt and/or potential re-equalization of Husband's retirement account may impact the overall division of property, and neither party appears to fully understand the structure of the spousal support. Accordingly, we vacate the alimony award and remand for further proceedings on the type and amount of support to be awarded. Because Wife's ability to pay for health insurance may be impacted by any revision to the alimony award, we also vacate the trial court's order regarding Husband's obligation to pay for Wife's health insurance and remand for further consideration.

- 13 -

### 3. Child Support

We turn next to Wife's assertion that the trial court erred in setting Husband's child support obligation. Wife contends that the court erred in deviating downward from the Child Support Guidelines by allowing Husband to deduct the cost of "reunification therapy" from his child support obligation. She submits that the costs of therapy should be divided between the parties on *a pro rata* basis based on their incomes as stipulated at trial.

Husband, on the other hand, acknowledges the parties' stipulation but argues that the trial court did not abuse its discretion by deviating from the Guidelines and allowing him to "offset the cost of reunification counseling." He submits that "[t]herapeutic repair to the children's relationship with Husband is necessary support for the children and is in their best interests." Husband also asserts that the trial court "went into incredible detail regarding why it ordered child support in the manner that it did."

The Tennessee Child Support Guidelines establish the presumptive amount of support. *Cain-Swope v. Swope*, 523 S.W.3d 79, 93 (Tenn. Ct. App. 2016). When deviating from the Guidelines, the trial court must state "the basis for the deviation and the amount the child support order would have been without the deviation." Tenn. Comp. R. & Regs. ch. 1240–2–4–.07(1)(b); *see* Tenn. Code Ann. § 36–5–101(e)(1)(A). The Guidelines provide:

> (b) The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter. The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and the amount the child support order would have been without the deviation. In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.
>
> (c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:
>
> 1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
>
> 2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
>
> 3. How, in its determination,

(i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

(ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. ch. 1240–2–4–.07(1)(c).

In this case, that trial court found that Husband had been "an involved father" prior to the divorce proceedings but that, since 2021, "the children no longer wish[ed] to communicate with Husband." The court found that Husband had not had a meaningful relationship with the children since July 2021, "[w]hether as a result of Wife's contempt for Husband or the children's contempt for Husband[.]" The court found that, despite its order requiring Husband to engage in reunification therapy, he had not done so because the parties were unable to agree on a therapist. The court found that "both parties share blame in creating obstacles for reunification" and that reunification therapy would be in the children's best interest. The court ordered that if the parties could not agree on a therapist, a Guardian ad Litem would be appointed to select a therapist for them. However, the trial court's best-interest determination regarding the need for therapy does not translate into a finding that a downward deviation from the Child Support Guidelines is in the children's best interests. Similarly, Husband's assertion in his appellate brief that "[i]t is logical that the [c]ourt would give Husband credit for paying the therapist directly, as he is the party that consistently follows orders of this [c]ourt[]" does not comprise a best-interest determination. Moreover, the trial court did not find that application of the Child Support Guidelines would be unjust or inappropriate in this case.

We also observe that the ruling effectively requires Wife to pay the entire cost of reunification therapy. Significantly, the ruling results in an indeterminant child support obligation where the costs and duration of therapy have not been determined. Accordingly, we reverse the trial court's ruling insofar as it permits Husband to deduct the cost of therapy from his child support obligation. The matter is remanded to the trial court to set Husband's child support obligation in accordance with the Child Support Guidelines.

However, as noted above, Wife argues that the parties should be bound by their stipulation at trial that they would share the cost of therapy on a *pro rata* basis based on their respective incomes. A stipulation is defined as "an agreement 'which is entered into mutually and voluntarily by the parties.'" *Hyneman v. Hyneman,* 152 S.W.3d 549, 555 (Tenn. Ct. App. 2003) (quoting *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999)). "As a general rule, parties are bound by oral stipulations made at trial." *Long v. Long*, No. M2006-02526-COA-R3-CV, 2008 WL 2649645, at *10 (Tenn. Ct. App. July 3, 2008) (citing *State, Dep't of Highways v. Urban Estates, Inc.,* 465 S.W.2d 357, 360

- 15 -

(Tenn. 1971)). Upon review of the record, we agree that the parties should be bound by their stipulation at trial. We affirm the trial court's ruling directing Husband to pay the costs of therapy directly. Wife shall reimburse Husband for her *pro rata* portion in a manner to be determined by the trial court upon remand.

Wife also argues that the trial court erred by calculating Husband's obligation based on the amount of parenting time awarded in the parenting plan rather than the amount of parenting time Husband in fact exercises. Wife relies on *Hibbens v. Rue*, No. E2014-00829-COA-R3-CV, 2015 WL 3643421 (Tenn. Ct. App. June 12, 2015) – an action for retroactive child support – for the proposition that Husband's child support obligation should be based on the number of days Husband actually spends with the children. She argues:

> At trial, Wife maintained that Husband's child support should be set based on Husband not exercising any overnight parenting time, however, when and if Husband actually started exercising parenting time, the child support should be reset to reflect the actual parenting time Husband exercised. Instead, the Trial Court set child support based on Husband exercising 80 overnight days of parenting time, even though Husband has not exercised any material visitation for the two years leading up to trial or after. Husband should not receive a windfall by a reduction of his child support and, at the same time, cause Wife additional expenses, because Husband does not exercise parenting time.

Husband, on the other hand, argues that the parties agreed that he would receive 80 days of parenting time. He asserts:

> If Wife believes that Husband is reasonably not exercising the days that he was ordered to have by the Court and the parties agreed to, the appropriate legal mechanism would be a Petition to Modify PPP, not an appeal immediately following the ruling, without giving Husband any opportunity to follow and/or enforce the PPP.

In the 2023 permanent parenting plan, the trial court ordered:

> The children shall attend therapy with the selected therapist for the purpose of reunification with Father. Father's first two (2) months of parenting time, beginning with the entry of this PPP, shall be suspended, as the Father will be participating in reunification therapy with the children.

Husband accordingly submits:

> If this Court believes that the first two (2) months of child support should

- 16 -

have been based on Zero (0) days of visitation, then that would be within the confines of the law.

In the context of a petition to modify child support, this Court noted that the Child Support Guidelines "contemplate that the number of 'days' spent with each parent, as reflected on the worksheet, will be the actual number of days spent in the care of each parent, as opposed to the number of days established under the permanent parenting plan." *Allen v. Allen*, No. M2013-00271-COA-R3-CV, 2014 WL 1713231, at *5 (Tenn. Ct. App. Apr. 28, 2014) (quoting *Ghorashi–Bajestani v. Bajestani,* No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *9 (Tenn. Ct. App. Sept. 24, 2013)).

In view of our forgoing discussion regarding the Child Support Guidelines, we agree with Husband that setting his child support obligation based on zero parenting days for the two months immediately following entry of the permanent parenting plan is within the "bounds" of the Guidelines. Husband's child support obligation thereafter is correctly based on the 80 days of parenting time allotted to him. However, we are mindful that more than two years have elapsed since entry of the parenting plan in 2023. Accordingly, upon remand, the trial court may exercise its discretion to modify Husband's child support obligation consistent with the Child Support Guidelines and *Allen v. Allen*.

## V. CONCLUSION

For the foregoing reasons, the trial court's classification and valuation of the parties' property is affirmed. We vacate the trial court's ruling regarding the division of marital debt as stated herein and remand for further consideration of the factors enumerated in Tennessee Code Annotated sections 36-4-121(c)(13) and 36-4-121(i). Pursuant to Tennessee Code Annotated section 36-5-121(i)(8), the division of marital property and debt impacts an award of support, we also vacate the trial court's alimony award and remand for further consideration. We reverse the trial court's ruling allowing Husband to deduct the cost of reunification therapy from his child support obligation; the costs of therapy shall be shared by the parties on a *pro rata* basis as stipulated at trial. Upon remand, the trial court is directed to set Husband's child support obligation in accordance with the presumptive amount set forth in the Child Support Guidelines and this Opinion. Further proceedings in the trial court on remand are limited to those necessary to effectuate the holdings herein. Any remaining issues are pretermitted as unnecessary in light of our disposition of this appeal. Wife's request for attorney's fees on appeal is denied. Costs on appeal are assessed one-half to the Appellee, Mark E. Hatley, and one-half to the Appellant, Ann E. Hatley, for which execution may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE